724 F.Supp. 884 (1989)
Allen J. GERBER and Doris Pickett, Plaintiffs,
v.
LONGBOAT HARBOUR NORTH CONDOMINIUM, INC., Defendant.
No. 89-230-CIV-T-17(C).
United States District Court, M.D. Florida, Tampa Division.
November 17, 1989.
*885 James J. Boczar, P.A., Simon Rosin, P.A., and Paul L. Wean, Trial Counsel, Becker, Poliakoff & Streitfeld, P.A., Sarasota, Fla., for plaintiffs.

ORDER
KOVACHEVICH, District Judge.
This cause is before the Court upon Defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), Plaintiff's response thereto, and both parties cross-motions for summary judgment. Additionally, the Court ordered both parties to rebrief the issues presented. Those briefs are also before the Court.
Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) established the principle that a complaint should not be dismissed for failure to state a claim unless the plaintiff can prove no set of facts which would entitle him to relief. This exacting standard has long been a staple of federal practice and is supported by hundreds of cases. Equally well supported is the dictate that, when evaluating a motion to dismiss, the trial court must view the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1947).
This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. Sweat v. Miller Brewing Co., 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. Hayden v. First National Bank of Mt. Pleasant, 595 F.2d 994, 996-97 (5th Cir.1979)[1], quoting Gross v. Southern Railroad Co., 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.
The Supreme Court of the United States held, in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):
In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.
Id., 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.
The court also said, "Rule 56(e) therefore requires that the moving party go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, `designate' specific facts showing there is a genuine issue for trial." Celotex, supra, 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274.

I.
This case raises important constitutional issues involving freedom of speech, secured by the First Amendment to the United States Constitution and made applicable to the States through the Fourteenth Amendment. At the center of the dispute stands one American who seeks to display the flag of our nation in defiance of condominium documents which forbid such display except on designated occasions. Plaintiff, an Air Force Veteran, will not have the Defendant determine the occasions on which he expresses his deep love and respect for America.
Defendant's motion to dismiss is predicated upon its assertion that, since it is not a governmental entity and has not assumed substantially all of the functions of a governmental entity[2], the provisions of the *886 First Amendment as incorporated in the Fourteenth Amendment simply do not apply.
Before launching into an examination of the merits of defendant's argument, this Court sua sponte points out that the Florida Legislature's recent enactment of § 718.113(4) clearly eviscerates Defendant's chances of prevailing on its motion. Florida Statutes § 718.113(4) states in its entirety
Any [condominium] unit owner may display one portable, removable United States flag in a respectful way regardless of any declaration rules or requirements dealing with flags or decorations.
Signed by Governor Martinez on June 27, 1989, this provision renders any consideration of Defendant's motion unnecessary at least with respect to facts occurring after the law's effective date. This Court will not strain to reach Constitutional issues in advance of the necessity of doing so. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346-48, 56 S.Ct. 466, 482-84, 80 L.Ed. 688 (1936) (Brandeis, J. concurring).
While this Court does not challenge the wisdom of Mr. Justice Brandeis' teaching, the issue of whether a Constitutional question must be resolved in a particular case must first be passed upon by the trial judge. Since the Plaintiff in the instant litigation seeks damages for the inability to exercise fundamental Constitutional rights prior to the passage of the statutory provision, and the statute is prospective only, it is necessary that this Court examine carefully the question of application vel non of the First and Fourteenth Amendments to this particular situation.

II.
In 1947, the United States Supreme Court sounded the death knell for those among our number who would deny minorities the housing of their choice simply because of the color of their skin through racially restrictive covenants. In Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), the six participating justices held that, while the Fourteenth Amendment does not reach purely private conduct, judicial enforcement of restrictive covenants constitutes state action, triggering the protections of the Fourteenth Amendment's Due Process and Equal Protection Clauses.
Applying the principles of Shelley to the situation sub judice, this Court finds that judicial enforcement of private agreements contained in a declaration of condominium constitute state action and bring the heretofore private conduct within the ken of the Fourteenth Amendment, through which the First Amendment guarantee of free speech is made applicable to the states.
It cannot be gainsaid that judicial enforcement of a racially restrictive covenant constitutes state action. It offends logic to suppose that equal protection of the law could be guaranteed by the very government whose judicial arm seeks to deny it. To suggest that judicial enforcement of private covenants abridging protected speech is not state action is, mutatis mutandis, equally repugnant to reason. Defendant's actions in denying Plaintiff his Constitutionally guaranteed right to display the American Flag were illegal ab initio, and this Court so holds.
Defendant deems it important that the association's proscription of flag display applied to all residents. Apparently it believes this renders their conduct benign, since its effects were distributed among all occupants. But the racially restrictive covenants in Shelley applied to all homeowners who were signators of the covenant. This Court cannot see how or why prohibiting all residents from displaying the symbol of our nation ceases to become a Constitutional violation. It is to suggest that a wrongful act loses its wrongful character merely by being performed on a large enough scale.
This Court has read and weighed the opinion of the Florida Second District Court of Appeal in Quail Creek Property Owners Association, Inc. v. Hunter, 538 So.2d 1288 (Fla.App.1989) (on rehearing). This Court cannot agree with its conclusion that judicial enforcement of racially restrictive *887 covenants is state action and judicial enforcement of covenants which restrict one's right to patriotic speech is not state action. Enforcement of private agreements by the judicial branch of government is state action for purposes of the Fourteenth Amendment, as the Highest Court in the land declared it to be in Shelley; it cannot be said that the terms of the agreement either increase or decrease the extent to which government is involved. It is an exercise in sophistry to posit that courts act as the state when enforcing racially restrictive covenants but not when giving effect to other provisions of the same covenant.
This Court is well aware that it is not infallible. That decisions are appealed and trial courts reversed is a fact of life to which this jurist is quite accustomed. But the ratio decidendi of this case is indistinguishable from that of the Shelley court. Judicial enforcement of private agreements which are violative of the Fourteenth Amendment cannot be both state action and not state action at the same time. To conclude otherwise violates a syntactically analytic truth.

III.
It is a curious ordering of values, and a questionable jurisprudence, which would forbid a man from displaying the symbol of his country while staunchly defending the rights of others to deface, desecrate, and destroy that same symbol. Had Mr. Gerber chosen to burn his flag rather than display it in a dignified manner, public spirited lawyers would have appeared to help him protect his constitutional right to burn old glory. But to proudly display the United States Flag Mr. Gerber was forced to commence a federal lawsuit at his own expense.
The legislature of the state of Florida has, through the enactment of Florida Statutes § 718.113(4), recognized that the right of each condominium owner to display the United States Flag is fundamental. The flag is a unique national symbol: thirteen stripes, alternating red and white; fifty white stars in a blue field, representing the union of the fifty states into one nation. It is, like the flags of other nations, the physical embodiment of sovereignty. But as America is unique among nations, so is our flag unique among flags. The first three words of our Constitution, "We the People", represent the profound difference between our government structure and the traditional view of governmental power. The government of the United States derives its powers from the people, in whom such power is inherent. It is the people of the United States who are the true sovereigns, and it is the sovereignty of the people that is represented by the white stars in a blue field on our nation's flag.
This Court will not countenance such treading upon the rights of those who would respectfully display the flag in front of their own home.

IV.
Defendant in its brief addressing the impact of § 718.113 raises several points. Most noteworthy is its assertion that the statute impairs existing contracts in violation of both the Federal and Florida Constitutions. This Court disagrees.
Section 718.113 merely recognizes by state statute a right that this Court determines to have already existed to display the American flag. Since the statute did not create rights, but merely recognized them, it does not impair existing contract rights.

V.
In summary, this Court finds that the Condominium Association's conduct was sufficiently attributable to the state to constitute action by the state. This action acted to deprive the Plaintiff of his rights, privileges and immunities secured by the First and Fourteenth Amendments to the United States Constitution within the meaning of 42 U.S.C. § 1983.[3] Defendant *888 also violated § 718.113, Florida Statutes, for the time period subsequent to its effective date. This Court has jurisdiction to adjudicate claims for violation of this state statute under its pendent jurisdiction.
Accordingly, it is now ORDERED
(1) That Plaintiff's motion for Summary Judgment be, and the same is, GRANTED.
(2) That Defendant be ENJOINED from interfering with Plaintiff's display of the Flag in compliance with the terms of § 718.113, Florida Statutes.
(3) That Plaintiff be awarded costs and reasonable attorneys fees in accordance with the provisions of 42 U.S.C. § 1988.
(4) The Clerk of the Court will enter judgment in favor of Plaintiff and consistent with this Order.
DONE and ORDERED.
NOTES
[1] Decisions of the former Fifth Circuit are binding precedent on this Court. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir.1981).
[2] The landmark case finding a private entity to be the functional equivalent of a state actor is of course Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1945). In Marsh, the Gulf Shipbuilding Corporation had assumed virtually all of the responsibilities of local government in the Mobile, Alabama suburb of Chickasaw. The Court found the guarantees of the First and Fourteenth Amendments to apply in full force to the company-owned town.
[3] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For purposes of this section, any act of Congress applicable to the District of Columbia shall be considered to be a statute of the District of Columbia."