Marcy **GOLDBERG**, Plaintiff,

v.

**400 EAST OHIO CONDOMINIUM ASSOCIATION, et alius,**
Defendants.

**No. 98 C 1615.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 23, 1998.

N.E.2d 93, 98 (1995) (quoting *Hidden Harbour Estates, Inc. v. Basso,* 393 So.2d 637, 640 (Fla.Dist.Ct.App.1981)); *see also* RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 6.13 (1998). Alternatively she could have used that law to defend against any attempt to collect on the lien which the condominium association placed on her unit as a penalty for her leafletting activities. *See Hinojosa,* 223 Ill.Dec. 222, 679 N.E.2d at 409; 765 ILCS 605/9(g)(1) (West); Compl. ¶¶ 20, 21.

John B. Murphey, Rosenthal, Murphey, Coblentz & Janega, Chicago. IL, Ellis B. Levin, Jerome S. Lamet & Associates, Chicago, IL, for Plaintiff.

Mark D. Pearlstein, Gary Irwin Blackman, Konstantinos Armiros, Boehm, Pearlstein & Bright, Ltd., Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge.

A less creative plaintiff, after observing that Illinois's Condominium Property Act forbids condominium boards of managers from adopting any rule which "impair[s] any rights guaranteed by the First Amendment to the Constitution" and provides that any such rule is "void as against public policy and [is] ineffective," 765 ILCS 605/18.4, 18.4(h) (West), would have brought suit under that law in state court after her condominium's board enacted a rule which barred all "[c]anvassing or distributing of materials to individual units" other than those materials related to political campaigning. Compl. ¶ 15; *see Board of Directors of 175 E. Delaware Place Homeowners Ass'n v. Hinojosa,* 287 Ill.App.3d 886, 223 Ill.Dec. 222, 679 N.E.2d 407, 409 (1997) (noting the filing of this type of suit). She would have prevailed if she showed that the regulation impaired a First Amendment right or even that the regulation was simply unreasonable—and to that end it would have been the board's burden to prove that the canvassing or distribution was " 'antagonistic to the legitimate objectives of the condominium association.' " *Apple II Condominium Ass'n v. Worth Bank & Trust Co.,* 277 Ill.App.3d 345, 213 Ill.Dec. 463, 659

Unfortunately for her, Marcy Goldberg (or maybe her attorney) has a more active imagination; she sued her condominium association and its board of directors under 42 U.S.C. § 1983 for a violation of the First Amendment itself. This leveraged her into federal court (and brought with it the tantalizing possibility of attorneys fees, *see* 42 U.S.C. § 1988(b); Compl. ¶ H), but she now faces a motion to dismiss on the ground that the board did not act "under color of" state law, as § 1983 requires.

Goldberg takes two stabs at the problem. She first asks for an extension of *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), where the Supreme Court held that a state court's enforcement of a racially restrictive covenant constituted sufficient action by the state to satisfy the Fourteenth Amendment's state action requirement. Since § 1983's "under color of" law requirement is " 'just as broad as' " the Fourteenth Amendment's state action requirement, *Hafer v. Melo,* 502 U.S. 21, 28, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 929, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)), Goldberg reasons that her First Amendment rights were violated when her condominium association enacted its rule, *see* Def.'s Resp. at 7.

Her principal support for this argument is the decision in *Gerber v. Longboat Harbour N. Condominium, Inc.,* 724 F.Supp. 884 (M.D.Fla.1989), *vacated in part on other grounds by* 757 F.Supp. 1339 (M.D.Fla.1991) (motion to reconsider), where the court held unconstitutional a condominium rule prohibiting residents from flying the American flag

except on specified holidays.[1] We are not persuaded by this opinion, which, after citing *Shelley*, reasoned as follows:

> Applying the principles of *Shelley* to the situation sub judice, this Court finds that judicial enforcement of private agreements contained in a declaration of private agreements contained in a declaration of condominium constitute[s] state action and bring[s] the heretofore private conduct within the ken of the Fourteenth Amendment....
>
> It cannot be gainsaid that judicial enforcement of a racially restrictive covenant constitutes state action. It offends logic to suppose that equal protection of the law could be guaranteed by the very government whose judicial arm seeks to deny it. To suggest that judicial enforcement of private covenants abridging protected speech is not state action is, *mutatis mutandis*, equally repugnant to reason. Defendant's actions in denying Plaintiff his Constitutionally protected right to display the American Flag were illegal *ab initio*, and this Court so holds.

*Id.* at 886. The court concluded that "the *ratio decidendi* in this case is indistinguishable from that of the *Shelley* Court" and that "[t]o conclude otherwise violates a syntactically analytic truth." *Id.* at 887.

The problem is that there is no indication (in either of the two opinions in the case) that the condominium association *actually* se-cured any sort of judgment or order from a state court. *See generally* Leon Friedman, *New Developments in Civil Rights Litigation and Trends in Section 1983 Actions*, 554 PLI/LIT 7, 25 (1996) (citing *Gerber*). In *Shelley* itself, of course, the petitioners were subject to state court orders divesting them of title in the properties at issue. *Shelley*, 334 U.S. at 6, 7, 68 S.Ct. 836. This was crucial, as the Court's holding was premised on the idea that the "[p]articipation of the State consists in the *enforcement* of the restrictions...." *Id.* at 13, 68 S.Ct. 836 (emphasis added). Reinforcing the point, the Supreme Court stated that "but for the *active intervention* of the state courts ... petitioners would have been free to occupy the properties...." *Id.* at 19, 68 S.Ct. 836 (emphasis added). It is difficult to understand, then, how the court in *Gerber* found state *action* before the state *acted*.

In fact, old-fashioned patriotism, rather than old-fashioned legal reasoning, is the source of the *Gerber* opinion's persuasive force. The plaintiff, we are told, was an Air Force veteran who wished to "express[ ] his deep love and respect for America." *Gerber*, 724 F.Supp. at 885. The court did not hide its sympathy for his predicament:

> It is a curious ordering of values, and a questionable jurisprudence, which would forbid a man from displaying the symbol of his country while staunchly defending the rights of others to deface, desecrate, and

---

1. The citation to a decision by a federal district court in Florida is not as random as it might appear. The 1998 version of the Historical and Practice Notes to 765 ILCS 605/18.4(h) state that the First Amendment part of that subsection "is modeled on provisions in the Florida Condominium Act," and *Gerber* relies in part on a Florida condominium statute. *Gerber*, 724 F.Supp. at 886 (citing FLA.STAT. ch. 718.113(4)). We should point out that one of Goldberg's attorneys, who as a state legislator sponsored amendments to the Condominium Act, is the author of the Historical and Practice Notes to section 18.4; actually he is the author of every signed Note to the Condominium Act (at least one of which even quotes statements he made as a legislator). In that capacity he changed the 1997 version of the Notes, which stated that "Thus, for example, a board of managers could not prohibit unit owners or their tenants from knocking on their neighbors' doors for purposes of political campaigning," to read "Thus, for example, a board of managers could not prohibit unit owners or their tenants from knocking on their neighbors' doors for purposes of *condominium or* political campaigning." The underlined portion is new and is not supported by any citation or reference to any change to the statute, but we note that it purports to make a state law claim by Goldberg all the more viable, as her leafletting activities concerned condominium governance, *see* Compl. ¶ 16. It is difficult, of course, to imagine how subsection 18.4(h) was concerned with condominium campaigning in 1998 but not in 1997 or when it was enacted, as the Florida statute on which 18.4(h) is presumably based, FLA.STAT. ch. 718.123, refers only to campaigning for "public office." It is even more difficult to imagine how it is not at all concerned with commercial speech, as the Notes have consistently claimed. We discuss the commercial speech point further, *infra*, but we observe here that these Notes may be ripe for another revision.

destroy that same symbol. Had Mr. Gerber chosen to burn his flag rather than display it in a dignified manner, public spirited lawyers would have appeared to help him protect his constitutional right to burn [O]ld [G]lory. But to proudly display the United States Flag Mr. Gerber was forced to commence a federal lawsuit at his own expense.

... The flag is a unique national symbol: thirteen stripes, alternating red and white; fifty white stars on a blue field, representing the union of fifty states into one nation. It is, like the flags of other nations, the physical embodiment of sovereignty. But as America is unique among nations, so is our flag unique among flags. The first three words of our Constitution, "We the People," represent the profound difference between our government structure and the traditional view of governmental power. The government of the United States derives its powers from the people, in whom such power is inherent. It is the people of the United States who are the true sovereigns, and it is the sovereignty of the people that is represented by the white stars in a blue field on our nation's flag.

This Court will not countenance such treading upon the rights of those who would respectfully display the flag in front of their own home.

*Id.* at 887.

■ We think the better view is that there is no state action inherent in the possible future state court enforcement of a private property agreement. *See Quail Creek Property Owners Ass'n, Inc. v. Hunter,* 538 So.2d 1288, 1289 (Fla.Dist.Ct.App.1989) (per curiam). Put another way, Gerber is not good law. Since we know from Goldberg's complaint that her condominium association has not secured a state judgment against her, Compl. ¶ 21, we hold that she cannot establish state action under *Shelley.* We express no opinion on whether it would be proper to extend *Shelley* to condominium rules actually enforced by state courts. *See, e.g.,* Note, *Judicial Review of Condominium Rulemaking,* 94 Harv.L.Rev. 647, 656–58 (1981) (describing some problems in the use of *Shelley*

as the vehicle to review rules promulgated by condominium associations).

■ Goldberg's second argument that the condominium association acted "under color of" law relies on the idea that condominium associations have powers "traditionally associated with the state." Def.'s Resp. at 3. She points to the association's power to make rules, conduct hearings, issue decisions, and impose fines and liens. There are two problems with this line of reasoning. First, it "confuse[s] an entity and its attributes." Richard A. Posner, Overcoming Law 211 (1995). Dogs breathe, eat, sleep, run, and play, but they are not humans, who also do all of those things. And it is not as though the attributes that Goldberg cites are those which have been described by the Supreme Court as possibly *exclusive* state functions. *See Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 158, 163, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (government elections, the comprehensive ownership and operation of a town, education, fire and police protection, and tax collection); *see also Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (jury system). Demonstrating that condominiums do certain things that state governments also do doesn't show that condominiums are acting as the state or in the state's place.

Second, it proves too much. The National Basketball Association makes rules, conducts hearings, issues decisions, and imposes fines, but it seems unlikely that the privately run sports league is a government actor. (This example misses the lien power of condominiums, but the private actor in *Flagg Brothers* had the power to impose and enforce its own lien, 436 U.S. at 151 n. 1, 155, 98 S.Ct. 1729.) The same holds true for unions and corporations to varying degrees—in fact the Condominium Property Act provides that condominium associations have the powers of a not for profit corporation, 765 ILCS 605/18.3 (West). We also observe that if Goldberg were correct we would have to consider whether the Eleventh Amendment would bar any part of this suit. *See Ridlen v. Four County Counseling Center,* 809 F.Supp. 1343, 1358 (N.D.Ind.1992); *cf. Scott P. Glauberman, Citizen Suits Against States: The Ex-*

*clusive Jurisdiction Dilemma,* 45 J.COPR.SOC'Y 63, 79 & n. 96 (1997) (describing one facet of the Eleventh Amendment's interaction with the state action doctrine).

■ One aspect of Goldberg's argument bears further discussion. She posits that the Illinois General Assembly itself recognized that *condominium associations would act as the state* by enacting the statute which states that "no [condominium] rule or regulation may impair any rights guaranteed by the First Amendment...." 765 ILCS 605/18.4(h) (West). Given that only a state actor can "violate" the First Amendment, she argues that this provision amounts to an acknowledgment that condominium associations are state actors.

We disagree. The statute forbids a board from "impair[ing] any rights guaranteed by the First Amendment," not from violating the Amendment itself. It is also strange that Goldberg's evidence of an exercise of state power is an action by a putatively private entity which allegedly *violates* state law. In any event, Goldberg fails to elucidate why, if the General Assembly wanted to acknowledge that condominium associations are state actors, it singled out the First Amendment. Ordinary state actors are bound by most of the rest of the Constitution, too. The statute's 1998 Historical and Practice Notes provide this explanation: "This provision was adopted in response to boards who were attempting to severely restrict [F]irst [A]mendment activity of owners and occupants, especially political activity." In keeping with its "political activity" comment, the Notes even attempt to exclude "commercial signs" from the provision's coverage, despite the fact that commercial speech falls within the First Amendment's purview. *See Board of Trustees of the State Univ. of New York v. Fox,* 492 U.S. 469, 473–74, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). In light of the Notes and of the Florida statute, *see supra* n. 1, we think that the "First Amendment" limitation in the Condominium Property Act simply prohibits condominium boards from unduly restricting ordinary political speech or activities, and we see no good reason to construe that limitation as a recognition that the board exercises government power.

The motion to dismiss is granted. It is so ordered.