APPLE II CONDOMINIUM ASSOCIATION, Plaintiff-Appellant, v. WORTH BANK AND TRUST COMPANY *et al.*, Defendants-Appellees.

First District (6th Division)    No. 1—94—2325

Opinion filed December 15, 1995.

Moss & Bloomberg, Ltd., of Bolingbrook (Steven P. Bloomberg and David J. Freeman, of counsel), for appellant.

Barrett, Sramek & Jasinski, of Palos Heights (Anthony M. Barrett and Kathryn A. Ryan, of counsel), for appellees.

JUSTICE ZWICK delivered the opinion of the court:

Apple II Condominium Association (the Association or Apple II) brought this action to enforce an amendment to its declaration of condominium ownership and to recover certain fines it imposed against one of its members. We are asked to decide whether an Illinois condominium association may amend its declaration to prohibit the leasing of member-owned units.

The Association is an Illinois not-for-profit corporation located in Crestwood, Illinois. In 1994, defendant Worth Bank & Trust Company was the legal title owners of certain property at Apple II known as unit 308. Defendants John and Eunici Harmon were the beneficial owners of that property, and defendants Patti Denooy, Beth Kingma and Lynrae Woltjer were tenants residing in unit 308. Ownership of unit 308 is governed by a declaration of condominium ownership (Declaration) originally recorded as document No. 87416544 in the office of the recorder of deeds of Cook County, Illinois.

The Harmons leased unit 308 to Denooy, Kingma and Woltjer on

August 15, 1992. The lease expired by its own terms just over a year later, on August 31, 1993. During the term of the lease, on November 5, 1992, more than two-thirds of the Apple II unit owners passed an amendment (the Amendment) to the Declaration limiting occupancy of Association units to unit owners and their immediate families. The Amendment included a provision which stated:

"Notwithstanding any provisions herein to the contrary, a Unit Owner's right to lease his Unit or cause it to be occupied by a person other than the Unit Owner or his immediate family in accordance with the provision of this Section shall be exercised only once during his ownership of said Unit and any subsequent lease to, or occupancy of, said Unit by a person other than the Unit Owner or his immediate family is prohibited."

The Amendment provided that unit owners could make written application to the board of managers of the Association for a special six-month extension upon termination of existing leases. When the Harmons requested a special one-year extension on May 3, 1993, the board denied their request. Nonetheless, Denooy, Kingma and Woltjer renewed their lease with the Harmons for an additional eight-month term on or about September 1, 1993.

On January 20, 1994, Apple II conducted a hearing and assessed fines against the Harmons. On April 22, 1994, the Association filed a complaint for forcible entry and detainer in the circuit court. The Harmons responded on May 20, 1994, by filing a motion to dismiss the Association's complaint pursuant to section 2—619(9) of the Code of Civil Procedure. (735 ILCS 5/2—619(9) (West 1994).) The Harmons argued principally that the board of managers lacked legal authority to restrict the rental of units to those who acquired title to the property prior to the Amendment; that the Amendment constituted an *ex post facto* modification of the Harmons' contractual rights made without consideration; that the board acted without authority; and that the board had failed to set forth a reasonable basis for its decision denying the one-year extension. The Harmons also argued that the terms of the Amendment permitted them to renew their lease with Denooy, Kingma and Woltjer for one additional year following the expiration of their first lease without board approval and that the fines imposed by the Association were excessive. These later claims were not, however, considered by the trial court in rendering its decision.

The trial court granted the motion on June 16, 1994. In doing so, the court noted that the Harmons had purchased their property for investment purposes at a time when there were no restrictions on leasing the unit; that there had been no showing that the Harmons'

tenants had presented any threat to the health or safety of the Association; that the Amendment was unreasonable; and that the Declaration was unclear as to whether amendments were to be given "retroactive application" to members who purchased their units before the enactment of amendments.

■ In ruling on a section 2—619 motion to dismiss, the trial court may consider pleadings, depositions, and affidavits. (See 735 ILCS 5/2—619(a), (c) (West 1992); 134 Ill. 2d R. 191(a); *Torcasso v. Standard Outdoor Sales, Inc.* (1993), 157 Ill. 2d 484, 486, 626 N.E.2d 225.) The proper standard of review is *de novo* and is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." (*Kedzie & 103rd Currency Exchange, Inc. v. Hodge* (1993), 156 Ill. 2d 112, 116-17, 619 N.E.2d 732.) We proceed with the proper legal standard in mind.

The affairs of a condominium association are controlled by the Condominium Property Act (765 ILCS 605/1 *et seq.* (West 1994)). The Condominium Property Act comprehensively regulates the creation and operation of Illinois condominium associations. (*Adams v. Meyers* (1993), 250 Ill. App. 3d 477, 488, 620 N.E.2d 1298.) Sections 22 and 22.1 of the Condominium Act require that every purchaser of a condominium property either receive or have made available for his or her inspection the Association's Declaration and bylaws. 765 ILCS 605/22, 22.1 (West 1994).

The Harmons do not contest having received timely notice of the contents of either the original Declaration or the Amendment. They do not dispute that the Amendment was passed in a way that was procedurally proper under both the Condominium Property Act and the original Declaration. The trial court found it significant, however, that the Harmons had relied upon the fact that the Association did not amend its Declaration until *after* they had purchased their property. The court noted that the Amendment did not indicate whether it was meant to apply to current owners. The court also noted that the Harmons had purchased their unit for investment purposes and that they had relied upon the fact that there were no leasing restrictions in making their decision to purchase the property.

■ The Condominium Property Act specifically states that amendments to the Declaration "shall be deemed effective upon recordation unless the amendment sets forth a different effective date." (765 ILCS 605/17 (West 1994).) In our view, neither the fact that there were no restrictions on the property when the Harmons purchased their unit nor the fact that the Harmons purchased the property for investment purposes is relevant to the proper resolution of the issues

presented in this case. As purchasers of the condominium property, the Harmons are charged with knowledge of the Condominium Property Act and that the Declaration governing their unit was subject to amendment. Section 18.4(h) of the Act specifically recognizes that the board may implement rules governing the "use of the property," so long as the restrictions do not impair those rights guaranteed by the first amendment to the United States Constitution or the free speech provisions of the Illinois Constitution. (See 765 ILCS 605/18.4(h) (West 1994).) In the absence of a provision either in the Amendment or in the original Declaration, condominium owners do not have vested rights in the status quo *ante*. See *Crest Builders, Inc. v. Willow Falls Improvement Association* (1979), 74 Ill. App. 3d 420, 393 N.E.2d 107 (party challenging amendment has no vested interest in the declaration as originally written); *McElveen-Hunter v. Fountain Manor Association, Inc.* (1989), 96 N.C. App. 627, 386 S.E.2d 435 (noting that most courts have adopted the "sounder view" that changes to a condominium declaration are binding upon both previous and subsequent owners).

We turn our attention, therefore, to the question of whether the Amendment represents a valid exercise of the Association's power. The question is one of first impression in Illinois. The Association points out that the courts of other jurisdictions, principally Florida, have approved broad leasing restrictions such as the one at issue. In *Flagler Federal Savings & Loan Association v. Crestview Towers Condominium Association* (Fla. Dist. Ct. App. 1992), 595 So. 2d 198, for example, the Florida Appellate Court found that a condominium association has the ability to prohibit leasing of Association units and that restrictions in the declaration are presumed valid. In *Seagate Condominium Association, Inc. v. Duffy* (Fla. Dist. Ct. App. 1976), 330 So. 2d 484, the Florida Appellate Court held that leasing restrictions are not an unreasonable restraint on alienation, and that associations have a legitimate right to adopt such restrictions to promote the residential character of their communities. The court recognized that condominium living is unique and requires a greater degree of control over and limitation upon the rights of the individual owners. See also *McElveen-Hunter v. Fountain Manor Association, Inc.* (1989), 96 N.C. App. 627, 630, 386 S.E.2d 435, 436-37 (holding that the lease restriction at issue was "reasonably related to the common good of all unit owners").

The Harmons rely principally upon Ohio law and urge us to adopt the "reasonableness test" applied by Ohio courts when a condominium association attempts to prohibit residential leasing. Under the Ohio test, a rule, regulation or amendment to the declaration is not

given effect if it is found to be unreasonable, arbitrary or capricious. (*Worthinglen Condominium Unit Owners' Association v. Brown* (1989), 57 Ohio App. 3d 73, 566 N.E.2d 1275.) Ohio courts addressing the question consider: (1) whether the restriction is arbitrary or capricious, considering whether it promotes the safety and enjoyment of the condominium; (2) whether the restriction is nondiscriminatory and evenhanded; (3) whether the restriction was passed in good faith for the common welfare of unit owners; (4) whether the rule creates potential hardship on unit owners; and (5) whether the restriction has been reasonably implemented. *Worthinglen*, 57 Ohio App. 3d at 76-77, 566 N.E.2d at 1277-78; see also *River Terrace Condominium Association v. Lewis* (1986), 33 Ohio App. 3d 52, 514 N.E.2d 732.

It is obvious that different condominium associations have different concerns and that restrictions suitable for one community of owners will not necessarily be suitable for another. It is also clear that the Condominium Property Act is designed to encourage associations to be self-governing and that it is the members themselves who are in the best position to make determinations regarding restrictions.

We decline to make a blanket pronouncement approving or condemning condominium leasing restrictions or to adopt the reasonableness test discussed in *Worthinglen*. A higher level of deference is necessary when courts review decisions made by self-governing bodies such as condominium associations. We therefore employ what we conclude is a better-reasoned approach to the problem which was employed by the Florida Appellate Court in *Hidden Harbour Estates, Inc. v. Basso* (Fla. Dist. Ct. App. 1981), 393 So. 2d 637.

■ In reviewing the merits of the trial court's decision to restrict a unit owner's use of association property, the Florida Appellate Court in *Basso* found that there were "two categories of cases" in which a condominium association attempts to enforce rules of restrictive use. "The first category is that dealing with the validity of restrictions found in the declaration of condominium itself. The second category of cases involves the validity of rules promulgated by the association's board of directors or the refusal of the board of directors to allow a particular use when the board is invested with the power to grant or deny a particular use." *Basso*, 393 So. 2d at 639.

■ The court held that "category one" restrictions are clothed in a very strong presumption of validity and will not be invalidated absent a showing that they are wholly arbitrary in their application, in violation of public policy, or that they abrogate some fundamental

constitutional right. The court specifically found that "reasonableness" is not the appropriate test for such restrictions. "Indeed, a use restriction in a declaration of condominium may have a certain degree of unreasonableness to it, and yet withstand attack in the courts. If it were otherwise, a unit owner could not rely on the restrictions found in the declaration of condominium, since such restrictions would be in a potential condition of continuous flux." (Emphasis omitted.) *Basso*, 393 So. 2d at 640.

■ "Category two" restrictions are treated differently under the *Basso* test. When the discretion of the board is challenged by a unit owner, the board must affirmatively show the use it wishes to prohibit or restrict is "antagonistic to the legitimate objectives of the condominium association." (*Basso*, 393 So. 2d at 640.) In such cases, courts consider whether the restriction will promote the health, happiness and peace of mind of the unit owners. *Basso*, 393 So. 2d at 640.

■ Both the Harmons and Apple II have cited the *Basso* opinion to support their respective positions. The Harmons claim that the restrictions at issue here fall within the "category two" class of restrictions in that it was the board of managers who first proposed and adopted the restriction and that the board denied their request for a special one-year extension. Relying on this, the Harmons assert that the Association's leasing restriction must be presumed invalid unless the board can affirmatively show the restriction to be reasonably related to the promotion of the health, happiness and peace of mind of the unit owners. The record shows that on November 5, 1992, however, the formal Amendment was passed by more than a two-thirds majority of the unit owners. Such approval by the Association's membership makes the leasing provisions now at issue a "category one" restriction and elevates the level of deference we must give to the Association. (See *Pines of Boca Barwood Condominium Association, Inc. v. Cavouti* (Fla. Dist. Ct. App. 1992), 605 So. 2d 984 (trial court improperly considered restriction as class two restriction when restriction was contained in condominium declaration).) We presume that the restriction is a valid exercise of Association power and strike it only if the record affirmatively shows that the restriction is wholly arbitrary, against public policy or in violation of some fundamental constitutional right.

■ The record does not support striking the leasing restriction at issue here. The restriction is not arbitrary. The Amendment to the Declaration sets forth a restriction which has the same force and effect as if it had been part of the original Declaration. (See *Crest Builders, Inc. v. Willow Falls Improvement Association* (1979), 74 Ill. App. 3d 420, 423, 393 N.E.2d 107.) The Amendment applies to all

unit members and provides that any unit may be leased by its owner no more than once with no lease exceeding one year. Although the lease restriction permits the board to exercise discretion in permitting a single six-month extension, the Harmons elected to seek a one-year extension. It is undisputed that the board has no authority to grant such an extension under the Declaration. In addition, the Harmons have made no arguments that would support a claim that the restriction is against Illinois public policy or would violate their constitutional rights.

We hold that an Illinois condominium association may prohibit the leasing of units either by board action or by a vote of the entire association pursuant to the terms of the condominium declaration. When such a rule is adopted by the board alone or requires the board to exercise discretion, we will scrutinize the restriction and uphold it only if it is affirmatively shown to be reasonable in its purpose and application. When the restriction is passed by the association's membership and the restriction is made part of the condominium declaration, however, we will presume that the restriction is valid and uphold it unless it can be shown that the restriction is arbitrary, against public policy or violates some fundamental constitutional right of the unit owners.

Although we have concluded that the restrictions at issue in this case represent a valid exercise of the Association's power and that the Amendment is applicable to the Harmons' unit, we have not considered those issues raised by the Harmons' motion which were not relied upon by the trial court in rendering its decision. Specifically, the court did not consider the Harmons' claim that the Amendment, by its own terms, permits them to lease to Denooy, Kingma and Woltjer for an additional one-time/one-year period as a matter of right following the expiration of the first lease. The court also did not consider the Harmons' claim that the fines imposed by the Association were excessive and made without authority. In light of the fact that there are remaining issues to be decided, we remand the matter for further proceedings consistent with this opinion.

For the foregoing reasons, the judgment entered by the circuit court of Cook County granting the Harmons' section 2—619 motion is reversed and the cause remanded for further proceedings.

Reversed and remanded.

EGAN and RAKOWSKI, JJ., concur.