BOARD OF DIRECTORS OF 175 EAST DELAWARE PLACE HOMEOWNERS ASSOCIATION, Plaintiff-Appellant, v. JORGE HINOJOSA *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 1—95—2262

Opinion filed March 31, 1997.—Rehearing denied April 24, 1997.

Torshen, Spreyer & Garmisa, Ltd., of Chicago (Jerome H. Torshen and Abigail K. Spreyer, of counsel), for appellant.

Brooks & Cahill, of Chicago (Michael Brooks, of counsel), for appellees.

JUSTICE RAKOWSKI delivered the opinion of the court:

Plaintiff, board of directors of 175 East Delaware Place Homeowners Association (the Board), filed suit against defendants, Nancy Lee Carlson and Benjamin Tessler, Jorge and Donna Hinojosa, and Independence One Mortgage Corporation, seeking to foreclose on a statutory lien under the Condominium Property Act (the Act) (765 ILCS 605/9(h) (West 1994)). The trial court dismissed plaintiff's complaint. Plaintiff appeals, contending that the trial court erred in finding the Board's no-dog rule unreasonable. For the reasons that follow, we reverse.

## FACTS

175 East Delaware Place was organized as a condominium in 1973 by the recording of a declaration and bylaws. The property includes floors 45 through 92 of the John Hancock building and contains 705 condominium units. The declaration and bylaws were silent on the issue of pet ownership in the building. In 1976, the Board adopted a rule allowing owners to have pets, including dogs, only with the permission of the Board. On January 21, 1980, during a regular Board meeting, the Board adopted a rule barring unit owners from bringing additional dogs onto the premises. In October of 1985, defendants Nancy Lee Carlson and Benjamin Tessler purchased a unit in the building. At this time, they signed a pet agreement acknowledging the no-dog rule. In February of 1993, while leasing out another one of their units, they signed the same agreement again. In March of 1993, the no-dog rule was reincluded in the Board's rules and regulations.

In June of 1993, defendants Carlson and Tessler acquired a dog. This same month, a group of owners brought suit against the Board challenging the no-dog rule. *Rodgers v. Board of Directors of 175 East Delaware Place Homeowners Ass'n*, No. 93 CH 5602. This suit was eventually abandoned and is not part of this appeal. In September of 1993, defendants Carlson and Tessler received notice of a hearing for their violation of the no-dog rule. The hearing was held on November 30, 1993, and the committee recommended to the Board that Carlson and Tessler be ordered to remove the dog within 30 days. If the dog remained on the premises after 30 days, defendants Carlson and Tessler should be assessed a fine of $100 per day for each day the dog remained. The Board adopted the committee's recommendation and

on January 23, 1994, began assessing fines on defendants Carlson and Tessler. On April 20, 1994, after Carlson and Tessler failed to pay the fines, the Board recorded a notice and claim of statutory lien.

In August of 1994, defendants Carlson and Tessler sold the unit to defendants Jorge and Donna Hinojosa subject to the lien. In November of 1994, the Board filed the instant action seeking to foreclose on the lien. Defendants moved to dismiss the suit pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1994)), claiming the Board had no authority to adopt the no-dog rule because the rule conflicted with the declaration and bylaws. The trial court ruled that the Board had the power to promulgate the rule but held that the rule was unreasonable.

## ANALYSIS

### A. LEGAL BACKGROUND

■ Condominiums are creatures of statute and, thus, any action taken on behalf of the condominium must be authorized by statute. "When a controversy regarding the rights of a condominium unit owner in a condominium arises, we must examine any relevant provisions in the Act and the Declaration or bylaws and construe them as a whole." *Carney v. Donley*, 261 Ill. App. 3d 1002, 1008 (1994).

A condominium is an interest in real estate created by statute that gives each owner an interest in an individual unit as well as an undivided interest in common elements. Administration and operation of the condominium are vested in the condominium association, which is comprised of all unit owners. The administration is exercised through the board of directors, which is elected by the owners. In addition to the Act, the operation and administration of the condominium are governed by three principal documents. These are the declaration, bylaws, and board rules and regulations. The declaration and bylaws form the basic framework of the administration, and the day-to-day operations are managed by board rules and regulations.

■ A condominium comes into being by the recording of a declaration. The declaration is prepared and recorded by either the developer or association. The Act defines the declaration as the "instrument by which the property is submitted to the provisions of [the] Act." 765 ILCS 605/2(a) (West 1994). Its primary function is to provide a constitution for the condominium—to guide the condominium development throughout the years. The declaration contains the property's legal description, defines the units and common elements, provides the percentage of ownership interests, establishes the rights and obligations of owners, and contains restrictions on the use of the property. R. Otto, *Illinois Act in Condominium Titles*, in Illinois Con-

dominium Law § 1.15, at 1—27 (Ill. Inst. for Cont. Legal Educ. 1994). All restrictions contained in the declaration are covenants that run with the land and bind each subsequent owner. They are given a strong presumption of validity. M. Kurtzon, *Representing the Condominium Association*, in Illinois Condominium Law § 10.19, at 10—17 (Ill. Inst. for Cont. Legal Educ. 1994). Section 4 of the Act details what elements must be contained in the declaration. Paragraph (i) states: "Such other lawful provisions not inconsistent with the provisions of this Act as the owner or owners may deem desirable in order to promote and preserve the cooperative aspect of ownership of the property and to facilitate the proper administration thereof." 765 ILCS 605/4(i) (West 1994).

■ The second document is the bylaws, which deal with administration and procedural matters concerning the property. Bylaws may be embodied in the declaration or be a separate document. In either case, the bylaws must be recorded with the declaration. 765 ILCS 605/17(a) (West 1994). Should the bylaws conflict with the declaration, the declaration prevails. Section 18 of the Act sets forth certain provisions that shall be included in the bylaws. Relevant to the issue before us is paragraph (k), which states: "[R]estrictions on and requirements respecting the use and maintenance of the units and the use of the common elements, not set forth in the declaration, as are designed to prevent unreasonable interference with the use of their respective units and of the common elements by the several unit owners." 765 ILCS 605/18(k) (West 1994).

■ The third item governing condominium conduct is the board rules and regulations. Section 18.4 of the Act deals with powers and duties of the board and provides that the board may:

> "[A]dopt and amend rules and regulations covering the details of the operation and use of the property, after a meeting of the unit owners called for the specific purpose of discussing the proposed rules and regulations." 765 ILCS 605/18.4(h) (West 1994).[1]

Under this rule, "a board of managers may not take any action that is beyond the authority granted it under the condominium instruments and the Condominium Property Act." 765 ILCS 605/18.4, Historical & Practice Notes, at 129 (Smith-Hurd 1993). The board shall exercise for the association all powers, duties, and authority vested in the association by law or the condominium documents. It

---

[1]The meeting requirement did not become effective until July 1, 1984, subsequent to the adoption of the rule in the case *sub judice*. Therefore, this part of the provision is not applicable to this case.

generally has broad powers and its rules govern the requirements of day-to-day living in the association. Board rules must be objective, evenhanded, nondiscriminatory, and applied uniformly. See J. Shifrin, *Cooperative, Condominium, and Homeowners' Association Litigation*, in Real Estate Litigation § 11.20, at 11—17 (Ill. Inst. for Cont. Legal Educ. 1994).

## B. POWER OF THE BOARD TO PROMULGATE THE NO-DOG RULE

■ As noted, pursuant to section 18.4 the Board has the power to adopt rules and regulations. Section 18(k) does discuss restrictions that shall be included in the bylaws. However, this provision merely gives the association the authority to include restrictions in the condominium instruments that will clothe the restrictions with a strong presumption of validity and make them less susceptible to attack. The provision does not state that if a restriction is not contained in the bylaws it will be unenforceable. We thus conclude that the Board's no-dog rule is not in conflict with the Act.

The 175 East Delaware Place declaration and bylaws do not make any reference to pet ownership or dogs, in particular. As to the Board's powers, the declaration provides:

> "The Board may adopt such reasonable rules and regulations as it may deem advisable for the maintenance, conservation and beautification of the Property, and for the health, comfort, safety and general welfare of the Owners and occupants of the Property. Written notice of such rules and regulations shall be given to all Owners and Occupants and the entire Property shall at all times be maintained subject to such rules and regulations."

The declaration clearly gives the Board authority to promulgate rules regarding use of and restrictions on the use of units. Because the Board is authorized to promulgate reasonable rules for the general welfare of the owners and the declaration is silent on the issue of dog ownership, the instant rule does not conflict with either the declaration or the bylaws.

Courts that have addressed the issue have held that dogs may be prohibited or restricted by provisions in the declaration or bylaws. See *Nahrstedt v. Lakeside Village Condominium Ass'n*, 8 Cal. 4th 361, 878 P.2d 1275, 33 Cal. Rptr. 2d 63 (1994) (restriction in recorded declaration barring all pets except fish and birds enforceable unless unreasonable); *Chateau Village North Condominium Ass'n v. Jordan*, 643 P.2d 791 (Colo. App. 1982) (rule barring all pets appended to bylaws and recorded enforceable); *Parkway Gardens Condominium Ass'n v. Kinser*, 536 So. 2d 1076 (Fla. App. 1988) (board rule barring pets unenforceable because declaration allowed them); *Zeskind v.*

*Jockey Club Condominium Apartments, Unit II, Inc.*, 468 So. 2d 1021 (Fla. App. 1985) (no-pet rule in declaration enforceable); *Wilshire Condominium Ass'n v. Kohlbrand*, 368 So. 2d 629 (Fla. App. 1979) (restriction in declaration barring replacement of lap dogs enforceable); *Johnson v. Keith*, 368 Mass. 316, 331 N.E.2d 879 (1975) (board rule barring all pets unenforceable; rule must be included in bylaws); *Noble v. Murphy*, 34 Mass. App. 452, 612 N.E.2d 266 (1993) (restriction barring all pets incorporated in original recorded documents enforceable); but see *Dulaney Towers Maintenance Corp. v. O'Brey*, 46 Md. App. 464, 418 A.2d 1233 (1980) (board rule limiting number of pets enforceable). The issue before us, however, is whether the Board may promulgate a rule restricting dog ownership. This issue has not been addressed in Illinois.

*Apple II Condominium Ass'n v. Worth Bank & Trust Co.*, 277 Ill. App. 3d 345 (1995), addresses use restrictions under the Act. In *Apple II*, we set forth standards for evaluating such restrictions and adopted the analysis set forth in *Hidden Harbour Estates, Inc. v. Basso*, 393 So. 2d 637 (Fla. App. 1981). We differentiated use restrictions that are contained in the declaration or bylaws from those promulgated by board rule. The restrictions in the first category "are clothed in a very strong presumption of validity and will not be invalidated absent a showing that they are wholly arbitrary in their application, in violation of public policy, or that they abrogate some fundamental constitutional right. *** '[R]easonableness' is not the appropriate test for such restrictions." *Apple II*, 277 Ill. App. 3d at 250-51. However, when the board promulgates a rule restricting the use of property, the second category, "the board must affirmatively show the use it wishes to prohibit or restrict is 'antagonistic to the legitimate objectives of the condominium association.'" *Apple II*, 277 Ill. App. 3d at 351, quoting *Basso*, 393 So. 2d at 640. Thus, "[w]hen such a rule [use restriction] is adopted by the board alone or requires the board to exercise discretion, we will scrutinize the restriction and uphold it only if it is affirmatively shown to be reasonable in its purpose and application." *Apple II*, 277 Ill. App. 3d at 352.

Based on the above, we conclude that the Board had the power to promulgate a reasonable no-dog rule.

## C. REASONABLENESS OF RULE

Because the rule was promulgated by the Board, it is not clothed with a strong presumption of validity. Thus, we must carefully scrutinize the rule to determine if it is reasonable in its purpose and application. Because the facts are not in dispute, the issue is one of law.

In *Dulaney Towers Maintenance Corp. v. O'Brey*, 46 Md. App. 464, 418 A.2d 1233 (1980), the court stated:

"The rationale for allowing the placing of restrictions in, or the barring of pets by way of, house rules is based on potentially offensive odors, noise, possible health hazards, clean-up and maintenance problems, and the fact that pets can and do defile hallways, elevators, and other common areas." *Dulaney Towers Maintenance*, 46 Md. App. at 466, 418 A.2d at 1235.

The above factors, in conjunction with the specific facts of this case, lead us to conclude the Board's no-dog rule is a reasonable exercise of the Board's rule-making power. The John Hancock building is located in a very urban and densely populated area of the city where parks, grass, and other recreational areas for dogs are scarce. The 705 residences are located on the 45th through 92nd floors. In order to take a dog out, one must access elevators and descend anywhere from 45 to 92 floors.

The rule was adopted to prevent possible injury or harm. The original purpose for promulgating the rule was due to an incident in which one dog killed another dog in the building. The Board had tried less restrictive measures to regulate dogs in the past. However, these measures did not cure or alleviate what the Board reasonably perceived to be potential and real problems. It should also be noted that when the no-dog rule was adopted, owners were allowed to retain existing dogs. The rule only prohibited additional and/or replacement dogs.

Because the Board applied the rule to all owners and the purpose for the rule was rational, we conclude that the rule is reasonable under the specific facts of this case.

## CONCLUSION

Based on the foregoing, we reverse the decision of the circuit court of Cook County and remand for further proceedings.

Reversed and remanded.

McNAMARA and SOUTH[2], JJ., concur.

---

[2]Justice South has replaced Justice Egan on the panel.