[No. 21637-0-II.   Division Two.   September 18, 1998.]

SHOREWOOD WEST CONDOMINIUM ASSOCIATION, *Appellant*, v. ASGHAR SADRI, ET AL., *Respondents*.

*Michael C. Simon* of *Blair, Schaefer, Hutchison & Wolfe*, for appellant.

*Zachary H. Stoumbos* of *Landerholm, Memovich, Lansverk & Whitesides, P.S.*, for respondents.

HOUGHTON, C.J. — Shorewood West Condominiums Owners Association amended its bylaws to restrict owners from

leasing units that were not already leased. Later, Asghar Sadri and Dorothy Grazul began leasing a unit purchased before the amendment. The trial court held the amendment invalid as to existing owners. We reverse.

## FACTS

Shorewood West Condominiums was established by declaration in 1978. The declaration restricted units to residential purposes and prohibited leasing units for fewer than 30 days. The declaration states that it can be amended by a "supermajority" of 60 percent of the owners. All unit owners are members of an owners' association, administered by a board of directors. Bylaws, adopted in 1978, also restrict units to residential purposes and may be amended by 60 percent of the owners.

On August 11, 1994, the Shorewood West Owners Association (Association) adopted a bylaw amendment restricting leasing to units already leased. It also adopted rules allowing owners to petition to lease their units under circumstances such as job relocation, extended vacation, disability, difficulty buying/selling, or "any other circumstance the Board deems appropriate." Fifteen units, already leased as of August 11, 1994, were "grandfathered in" as allowable rental units.

In December 1993, respondents Grazul and Sadri purchased unit 7501 for $150,000. They were given a "Property Condition Report" stating there were no restrictions on owners renting units. Grazul, a licensed real estate broker, lived in the unit until the spring of 1995. In May 1995, respondents leased the condominium, effective July 1995.

In January 1996, the Association filed a lawsuit seeking a declaratory judgment and injunctive relief. The trial court agreed with the Association that it had the authority to amend its bylaws to restrict leasing, but ruled that the restriction was valid only as to owners acquiring units after the date of the amendment. The trial court awarded Gra-

zul and Sadri $1,180 in attorney fees for prevailing on the restriction's application to current owners.

The Association appeals, contending that a condominium owners association may amend its bylaws to restrict leasing of all units occupied by owners at the time of amendment. Grazul and Sadri cross appeal, arguing that the trial court erred: (1) in denying their motion for summary judgment that the Association did not have the authority to amend bylaws to restrict leasing; (2) in granting the Association's motion for summary judgment that the lease restrictions were valid; and (3) in denying their motion for all of the attorney fees requested.[1]

## ANALYSIS

█ Condominiums are a statutorily-created form of real estate. RCW 64.32.030 ("Each apartment, together with its undivided interest in the common areas . . . shall for all purposes constitute and be classified as real property."). The rights of condominium unit owners are, therefore, not identical to those of real property owners at common law. *See Rouse v. Glascam Builders, Inc.*, 101 Wn.2d 127, 132, 677 P.2d 125 (1984) ("condominiums or horizontal property regimes were unknown in common law"); *McElveen-Hunter v. Fountain Manor Ass'n, Inc.*, 96 N.C. App. 627, 386 S.E.2d 435, 436 (1989) ("The rights and duties of condominium unit owners . . . are not the same as those of real property owners at common law."), *aff'd*, 328 N.C. 84 (1991). "Central to the concept of condominium ownership is the principle that each owner, in exchange for the benefits of association with other owners, 'must give up a certain degree of freedom of choice which he [or she] might otherwise enjoy in separate, privately owned property.' " *Noble v. Murphy*, 34 Mass. App. Ct. 452, 612 N.E.2d 266, 269 (1993) (quoting *Hidden Harbour Estates, Inc. v. Norman*, 309 So. 2d 180, 182, 72 A.L.R.3D 305 (Fla. Dist. Ct. App. 1975)).

---

[1]The analysis of the Association's issues also resolves the cross appeal issues.

Washington's Horizontal Property Regimes Act (Act) anticipates governance by an owners association, with property restrictions to be imposed by recorded instrument. The Act requires each owner to strictly comply with the bylaws and rules, "as either may be lawfully amended." RCW 64.32.060. It requires a declaration to contain a statement of purpose and restrictions on use of units and procedures for amending the declaration and bylaws; a declaration amendment must have at least 60 percent approval, with unanimous consent if it alters the value of the property and of each unit. RCW 64.32.090. All owners "shall be subject to this chapter and to the declaration and bylaws," and decisions by the Association "under the provisions of this chapter, the declaration, or the bylaws . . . shall be deemed to be binding on all [unit] owners." RCW 64.32.250.

Washington has not yet adopted a standard to review condominium rules. Courts in other jurisdictions have adopted various approaches to review restrictions on unit use. Some apply constitutional principles, using equal protection or due process standards, either disregarding the state action requirement or analogizing condominiums to municipalities. *See, e.g.*, *White Egret Condominium, Inc. v. Franklin*, 379 So. 2d 346 (Fla. 1979) (equal protection); *Majestic View Condominium Ass'n v. Bolotin*, 429 So. 2d 438 (Fla. Dist. Ct. App. 1983) (procedural due process); *cf. Thanasoulis v. Winston Towers 200 Ass'n*, 214 N.J. Super. 408, 519 A.2d 911 (1986) (finding constitutional principles inapplicable for lack of state action), *rev'd on other grounds*, 110 N.J. 650, 76 A.L.R.4TH 273 (1988); *Covered Bridge Condominium Ass'n, Inc. v. Chambliss*, 705 S.W.2d 211, 213 (Tex. App. 1985) (reviewing for constitutionality while recognizing that the "restriction [was] created by a private contract"); *Franklin v. Spadafora*, 388 Mass. 764, 447 N.E.2d 1244, 1250, 39 A.L.R.4TH 77 (1983) (assuming state action is present when condominium amends bylaws); *Levandusky v. One Fifth Ave. Apartment Corp.*, 75 N.Y.2d 530, 553 N.E.2d 1317, 1320, 554 N.Y.S.2d 807 (1990)

(describing condominium association as a "quasi-government").

Courts often use contract theory to bind owners to rules adopted after purchase, reasoning that the purchaser knew the rules could change, and by purchasing, consented. *See, e.g., Thanasoulis,* 519 A.2d at 919. Courts also apply the business judgment rule to actions of an owners association, holding its members liable for their decisions only if they benefited to the detriment of other owners. *See, e.g., Schwarzmann v. Association of Apartment Owners,* 33 Wn. App. 397, 402, 655 P.2d 1177 (1982).

██ The most common approach, which the Association urges us to adopt, presumes the validity of restrictions in recorded documents, but tests rules adopted by a governing body for reasonableness. *Hidden Harbour Estates, Inc. v. Basso,* 393 So. 2d 637, 639-40 (Fla. Dist. Ct. App. 1981). *See also Board of Dirs. of 175 E. Del. Place Homeowners Ass'n v. Hinojosa,* 287 Ill. App. 3d 886, 679 N.E.2d 407, 411, 223 Ill. Dec. 222 (1997); *Ridgely Condominium Ass'n v. Smyrnioudis,* 105 Md. App. 404, 660 A.2d 942, 949 (1995), *aff'd,* 343 Md. 357 (1996); *Nahrstedt v. Lakeside Village Condominium Ass'n,* 8 Cal. 4th 361, 878 P.2d 1275, 1283, 33 Cal. Rptr. 2d 63 (1994); *Noble,* 612 N.E.2d at 270; *Preston Tower Condominium Ass'n v. S.B. Realty, Inc.,* 685 S.W.2d 98, 102 (Tex. App. 1985). A reasonable restriction is one that is "reasonably related to the promotion of the health, happiness and peace of mind of the unit owners." *Basso,* 393 So. 2d at 640.

The *Basso* approach differentiates between two situations in which an owners association attempts to enforce restrictions, depending upon whether the restriction is in a recorded document or a board-promulgated rule. *Hinojosa,* 679 N.E.2d at 411. Restrictions in the first category "are clothed with a very strong presumption of validity which arises from the fact that each individual unit owner purchases his unit knowing of and accepting the restrictions to be imposed." *Basso,* 393 So. 2d at 639. Such a restriction is akin to a covenant running with the land and

will be upheld unless wholly arbitrary in application or in violation of public policy or a fundamental constitutional right. *Basso*, 393 So. 2d at 640. On the other hand, a governing body that promulgates a rule restricting some use must show that the use is "antagonistic to . . . the health, happiness and peace of mind of the individual unit owners." *Id.* Such restrictions must be reasonable in both purpose and application. *Hinojosa*, 679 N.E.2d at 411.

The *Basso* court differentiated between declarations and board rules, without reference to bylaws. Some courts see a significant distinction as to whether buyers had notice of a restriction before purchase; other courts distinguish between rules approved by a supermajority of owners and those adopted by an elected board. *See, e.g., Noble*, 612 N.E.2d at 270 (upholding bylaw restriction in "originating documents"); *Apple II Condominium Ass'n v. Worth Bank & Trust Co.*, 277 Ill. App. 3d 345, 659 N.E.2d 93, 98, 213 Ill. Dec. 463 (1995) (deferring to declaration amendments passed by a supermajority). Courts have declined to apply a stricter standard to amendments, "expressly treat[ing] an amendment the same as an original recorded provision, on the basis that the unit owner had notice of the provisions and procedures for amending a recorded provision when the unit was purchased." *Ridgely Condominium*, 660 A.2d at 949 (collecting cases in support of both propositions).

The court in *Ridgely Condominium* reviewed a bylaw amendment under the stricter reasonableness test. *Id.* at 950. In that case, the first floor of the condominium building housed professional offices. A bylaw amendment required commercial clients to use an exterior entrance rather than the lobby. Asserting that a more deferential standard would be appropriate to review restrictions recorded before purchase, the court held that "bylaw amendments pertaining to use restrictions" must be reasonable to prevent discrimination against certain classes of owners. *Id.* at 951. The Maryland statute requires that two-thirds of the owners approve bylaw amendments; the "relative ease" of amending bylaws supported a stricter review.

*Id.* at 949-50. Because the amendment did not treat owners equally and was not reasonably related "to the health, happiness, and enjoyment of unit owners," it was invalid. *Id.* at 951.

We find the reasoning in *Basso* and *Ridgely Condominium* persuasive and adopt a reasonableness requirement for both postpurchase amendments and rules promulgated by a governing body. This less deferential review is necessary to protect purchasers from unreasonable infringement on their property rights. We thus look at the restriction disputed here to determine whether it meets this test.

*Leasing restrictions may be reasonable*

■ Restrictions on leasing have been upheld as reasonable restraints on alienation. Lewis A. Schiller, *Limitations on the Enforceability of Condominium Rules*, 22 STETSON L. REV. 1133, 1157 (1993) (citing 17 A.L.R.4TH 1247 (1982)); *Seagate Condominium Ass'n v. Duffy*, 330 So. 2d 484 (Fla. Dist. Ct. App. 1976) (upholding prohibition on leasing for investment, but permitting a four- to twelve-month lease with special permission); *Kroop v. Caravelle Condominium, Inc.*, 323 So. 2d 307 (Fla. Dist. Ct. App. 1975) (upholding rule allowing owner to lease unit only once during lifetime); *but cf. Barnett & Klein Corp. v. President of Palm Beach—A Condominium, Inc.*, 426 So. 2d 1074 (Fla. Dist. Ct. App. 1983) (holding invalid as discriminatory rule allowing owners who held title before set date to lease once a year, but others once every two years). Leasing restrictions may be reasonable in light of such goals as inhibiting transiency, *Duffy*, 330 So. 2d at 486-87, or discouraging purchase for investment rather than residency, *Spadafora*, 447 N.E.2d at 1247. Owner-occupied buildings may promote stability and a sense of community. *See City of Oceanside v. McKenna*, 215 Cal. App. 3d 1420, 264 Cal. Rptr. 275 (1989) (finding ban on leasing reasonable where intended to foster a stabilized community). People generally buy into regulated developments such as condominiums in order to protect

economic interests and social preferences. See Todd Brower, *Communities within the Community: Consent, Constitutionalism, and Other Failures of Legal Theory in Residential Associations*, 7 J. LAND USE & ENVTL. L. 203, 205-06 (1992). Restricting leases, with appropriate exceptions, is reasonable in the context of a residential condominium.

The fact that the Association amended its bylaws rather than its declaration is immaterial. The Association declaration limits units to "residential purposes." It allows bylaw amendments to enforce "rules and regulations for the use, occupancy and management of the property not inconsistent herewith." Evidence presented tended to show that unit values would increase if leasing were restricted. The disputed restriction on the use and occupancy of units is not inconsistent with a residential purpose requirement.

*Amendments may apply to existing owners*

■ Generally courts have held restrictions contained in amendments invalid as to owners who purchased before the restriction was adopted. *See Winston Towers 200 Ass'n v. Saverio*, 360 So. 2d 470, 471 (Fla. Dist. Ct. App. 1978); *Breene v. Plaza Tower Ass'n*, 310 N.W.2d 730, 734 (N.D. 1981). Nevertheless, most courts apply amendments to all unit owners, reasoning that purchasers know that bylaws can be amended. *McElveen-Hunter*, 386 S.E.2d at 436 (amendment restricting leasing applies to existing owners); *Hill v. Fontaine Condominium Ass'n*, 255 Ga. 24, 334 S.E.2d 690, 691 (1985) (amendment banning children applies to all owners); *Everglades Plaza Condominium Ass'n v. Buckner*, 462 So. 2d 835, 836-37 (Fla. Dist. Ct. App. 1984) (same); *Ritchey v. Villa Nueva Condominium Ass'n*, 81 Cal. App. 3d 688, 146 Cal. Rptr. 695, 100 A.L.R.3D 231 (1978) (same); *see Flagler Fed. Sav. & Loan Ass'n v. Crestview Towers Condominium Ass'n*, 595 So. 2d 198, 200 (Fla. Dist. Ct. App. 1992) (mortgagee whose title relates back to date prior to declaration amendment restricting leasing is bound by amendment) (citations omitted). Courts reason that con-

dominium owners acquire units "subject to the right of the other owners to restrict their occupancy." *McElveen-Hunter*, 386 S.E.2d at 436.

If the leasing restriction at bar reasonably relates to the health, happiness and peace of mind of the unit owners as a whole, then the welfare of the condominium community outweighs an individual owner's interest in profit. Grazul stated that she purchased the unit expecting to use it for investment, although the declaration requires units to be used for residential purposes. The trial court erred by holding the restriction inapplicable to all but future purchasers.

*"Grandfathering" existing rentals is a reasonable distinction*

█ Even when restrictions are considered reasonable they may not be selectively enforced. *White Egret Condominium*, 379 So. 2d at 352 (holding that, although age restriction was reasonable, association could not block sale to purchaser with children when children were living in development). Uniform application is "one factor that should weigh heavily in applying the reasonableness test." *Ridgely Condominium*, 660 A.2d at 951.

In *Ackerman v. Sudden Valley Community Ass'n*, 89 Wn. App. 156, 944 P.2d 1045 (1997), *review denied*, 134 Wn.2d 1014 (1998), an owner argued that a dues structure that assessed members differently based upon lot improvements created two classes of members, in violation of a covenant granting the Association power to assess members "on an equitable basis." The court held that neither lot improvements nor the amount of dues paid were "the type of distinguishing feature that would set different classes of members apart." *Id.* at 168. After all, "one is not a different class of citizen in this country merely because one pays more or less in taxes." *Id.*

Similarly, a bylaw amendment restricting all future leases does not create two classes of members. The Association amendment allows existing rentals only until such time as

ownership of those units changes, in any manner; barring further amendments, the entire condominium will eventually become owner-occupied. The ban on future leases thus applies equally to all units.

Because our resolution of this case leaves the Association as the prevailing party, we reverse the award of attorney fees and award fees to the Association.

BRIDGEWATER and ARMSTRONG, JJ., concur.

After modification, further reconsideration denied November 6, 1998.

Review granted at Wn.2d 1027 (1999).