2016 IL App (1st) 141427

THIRD DIVISION
February 3, 2016

No. 1-14-1427

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| KENNETH R. STOBE and HERBERT R. GOTTELT, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2012 CH 41716 |
| | ) | |
| 842-848 WEST BRADLEY PLACE CONDOMINIUM | ) | |
| ASSOCIATION, | ) | The Honorable |
| | ) | Kathleen G. Kennedy |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Presiding Justice Mason and Justice Fitzgerald Smith concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiffs Kenneth R. Stobe and Herbert R. Gottelt own a condominium at 846 West Bradley Place. Defendant, the 842-848 West Bradley Place Condominium Association, supervises the condominium building. When defendant's board (Board) adopted a rule limiting the amount of units that could be leased at any one time, plaintiffs commenced this action, asserting that the Board's rule impermissibly conflicted with the condominium declaration. Specifically, plaintiffs argued that the declaration granted unit owners the right to lease their

units. Ultimately, the circuit court entered summary judgment in their favor. Defendant now appeals.

¶ 2                                    I. BACKGROUND

¶ 3      The declaration and bylaws governing defendant's 13-unit condominium building were filed on September 23, 2005. Certain provisions in the declaration were expressly "subject to the rules and regulations" of the Board or specified that "[t]he Board or the Association may prescribe such rules and regulations" regarding a given subject as they deemed fit. The declaration also referred to the Board's discretion to take certain actions. To amend the declaration, however, that document required an affirmative vote of the unit owners.

¶ 4      Additionally, article VII of the declaration governed the "sale, leasing or other alienation" of units and contained certain limits on transfers and lease terms. That article stated, among other things, that if a proposed tenant of any unit agreed to the terms of the declaration, the Board's rules, and the Illinois Condominium Property Act (Act) (765 ILCS 605/1 *et seq.* (West 2004)), the Board had no right of first refusal. Article VII further stated that "[n]o Unit shall be leased or subleased for hotel or transient purposes or for terms less than six (6) months," and specified limitations on the lease or sublease of parking spaces. While other provisions in the declaration expressly referred to the Board's authority to promulgate further rules and regulations on a given subject matter, article VII did not do so with respect to leasing. With that said, article VII did not expressly state that owners had the right to lease their units either.

¶ 5      Furthermore section 3.08 of the bylaws states that "[t]he Board shall exercises [*sic*] for the Association all powers, duties, and authority vested therein by the Act, and Declaration, or these Bylaws, except for such powers, duties, and authority reserved thereby by the members of the Association." The same section states:

"The powers and duties of the Board shall included [*sic*], but shall not be limited

to, the following:

\*\*\*

(b) to administer, manage, and operate the Property, including the

Common Elements, and to formulate policies therefor;

\* \* \*

(j) to adopt rules and regulations, with written notice thereof to the Unit

Owners, governing details of the administration, management operation, and use

of the Property, including the Common Elements."

¶ 6    Plaintiffs purchased their unit approximately one month after the aforementioned documents were filed. From that time forward, they leased their unit to tenants. In 2007, other unit owners became concerned that a low owner-occupancy rate would hinder future condominium sales and refinancing. Following the Board's investigation into mortgage and lending guidelines, the Board provided unit owners with proposed rules and regulations, which stated, in pertinent part, that no more than 30% of units could be rented at any one time. The Board unanimously adopted this measure following a meeting on July 6, 2010. Plaintiffs, however, believed the Board's action was unauthorized.

¶ 7    In September 2012, defendant advised plaintiffs that it intended to enforce the leasing restriction and evict plaintiffs' tenants. Two months later, the Board held a special meeting regarding plaintiffs' rent violation. The minutes stated that while "a 50% owner occupancy rate may be sufficient from FHA standards, the Board believes it must look out for the interests of those hoping to obtain conventional financing, which often stipulate greater requirements." The minutes cited the Board's concern that future sales or attempts at refinancing would otherwise be

jeopardized. The Board then decided to impose $6,600 in retrospective fines against plaintiffs, attach a lien to their unit and evict their tenants.

¶ 8    Consequently, plaintiffs filed a complaint seeking a judgment declaring that the Board lacked authority to restrict the amount of units leased. Specifically, plaintiffs argued that the Board's rule impermissibly conflicted with the declaration, which allowed all unit owners to rent their units subject to certain limitations enumerated therein. Plaintiffs further argued that such a limitation on leasing could only be implemented by amending the declaration, which required 75% of the unit owners' support. Subsequently, plaintiffs moved for summary judgment. In response, defendant argued that the Act, as well as the condominium documents, authorized the Board to implement the challenged rule. Defendant also argued that the rule was entirely consistent with the declaration.

¶ 9    Following a hearing, the circuit court initially entered judgment in favor of defendant. The court found the "unit owners' right to lease their units must be explicitly granted or denied in the condominium documents." Thus, the Board's rule did not conflict with the declaration. Upon plaintiffs' motion for reconsideration, however, the court entered summary judgment in their favor. The court found that when considered as a whole, the declaration intended that the Board would not be authorized to modify leasing restrictions.

¶ 10                                II. ANALYSIS

¶ 11    On appeal, defendant asserts the circuit court erroneously entered summary judgment in favor of plaintiffs because the bylaws authorized the Board to implement rules limiting leasing and the Board's rule does not conflict with the declaration.

¶ 12    A court should grant summary judgment only where the pleadings, admissions on file, depositions and affidavits present no genuine issue of material fact, so that the movant is entitled

to judgment as a matter of law. *Ridenour v. Carl Sandburg Village No. 7 Condominium Ass'n*, 402 Ill. App. 3d 532, 535 (2010). In addition, we review an order granting summary judgment *de novo*. *Carney v. Donley*, 261 Ill. App. 3d 1002, 1005 (1994). Thus, we may affirm the judgment on any basis, regardless of the circuit court's reasoning. *Antonacci v. Seyfarth Shaw, LLP*, 2015 IL App (1st) 142372, ¶ 21.

¶ 13    We interpret condominium declarations according to the principles of contract interpretation. *Toepper v. Brookwood Country Club Road Ass'n*, 204 Ill. App. 3d 479, 487 (1990);15 Am. Jur. 2d *Condominiums & Cooperative Apartments* § 38 (2014).  The primary rule of interpretation is to give effect to the drafting parties' intent. *La Salle National Trust, N.A. v. Board of Directors of the 1100 Lake Shore Drive Condominium*, 287 Ill. App. 3d 449, 455 (1997). To resolve controversies involving a condominium owner's rights, courts must construe the declaration, bylaws and any relevant provisions of the Act as a whole. *Ridenour*, 402 Ill. App. 3d at 536.

¶ 14    Section 18.4(h) of the Act governs the powers and duties of the Board:

"The board of managers shall exercise for the association all powers, duties and authority vested in the association by law or the condominium instruments except for such powers, duties and authority reserved by law to the members of the association. The powers and duties of the board of managers shall include, but shall not be limited to, the following:

* * *

(h) To adopt and amend rules and regulations covering the details of the operation and use of the property, after a meeting of the unit owners called for the specific purpose of discussing the proposed rules and regulations. *** However, no rule or regulation may impair any rights guaranteed by the First Amendment to

5

the Constitution of the United States or Section 4 of Article I of the Illinois

Constitution, *nor may any rules or regulations conflict with the provisions of this*

*Act or the condominium instruments*." (Emphasis added.) 765 ILCS 605/18.4(h)

(West 2004).

¶ 15    We find the Board lacked authority to promulgate a rule restricting leasing because the rule conflicts with the declaration's intent. As stated, the declaration expressed certain limitations on leasing. If owners had no right to lease their units, the enumerated limitations would be meaningless. Additionally, the article on leasing did not specify that it was subject to further regulation by the Board, unlike other provisions in the declaration that did. While this omission would not alone require a determination that owners' possess leasing rights, the declaration's intent is clear when considered in its entirety: Unit owners have the right to lease their units subject to the declaration's limitations.

¶ 16    We also reject defendant's assertion that the declaration would have expressly removed the Board's authority to act with respect to leasing restrictions had that been the drafters' intent. The question, however, is whether the Board has been granted authority, not whether authority has been taken away.  Under the Board's approach, the Board could do anything it pleased so long as the declaration did not expressly forbid it. Furthermore, the bylaw granting the Board the authority to adopt rules regarding the use of the property does not warrant a different conclusion. We presume that the bylaws' drafters were aware of section 18.4(h) of the Act, which provides that a board's rules cannot conflict with the condominium instruments. Thus, the bylaws did not purport to give the Board unfettered discretion to regulate the use of the property.

¶ 17    The appellate court's decision in *Apple II Condominium Ass'n v. Worth Bank & Trust Co.*, 277 Ill. App. 3d 345, 346 (1995), does not further defendant's position. There, the issue was

whether a condominium association, rather than its board, could amend its declaration to prohibit unit owners from leasing their units more than once during ownership. *Id*. at 346-47. The amendment also authorized the board to grant six-month extensions. *Id*. at 347. When the board denied a one-year extension to the beneficial owners of a unit, the owners challenged the amendment. *Id*. Although the association, rather than the board, had implemented the restriction, the owners nonetheless argued that the board lacked authority to restrict the rental of units. *Id*.

¶ 18     First, the reviewing court found that absent a provision in an amendment or the original declaration, condominium owners' have no right to maintain the status quo. *Id*. Specifically, condominium purchasers are charged with knowledge of the Act and in turn, knowledge that a declaration could be amended. *Id*. at 348-49.  The court also noted that section 18.4(h) of the Act authorizes a board to implement rules regarding use of the property. *Id*. at 349.

¶ 19     Adopting Florida case law, the reviewing court then found there were two categories of use restrictions: (1) restrictions in the declaration, and amendments thereto; and (2) restrictions promulgated by the board. *Id*. at 350 (quoting *Hidden Harbour Estates, Inc. v. Basso*, 393 So. 2d 637, 639 (Fla. Dist. Ct. App. 1981)). While the first category of restrictions enjoys a strong presumption of validity, regardless of how reasonable the restriction may be, the second category does not. *Apple II Condominium Ass'n*, 277 Ill. App. 3d at 350-51. Instead, the board must show that the use it wishes to restrict is antagonistic to the association's legitimate objectives. *Id*. at 351. Because the restriction before it fell within the first category, the court found it was entitled to deference absent an affirmative showing that the amendment was wholly arbitrary, against public policy or in violation of a constitutional right. *Id*.

¶ 20     Unlike *Apple II Condominium Ass'n*, here, we are faced with a restriction implemented by defendant's Board, not an amendment to the declaration. Any legal discussion regarding board

7

restrictions in that case was arguably *dicta*. To the extent this *dicta* was persuasive, it was equally distinguishable. The court did not address a situation where a rule promulgated by the board conflicts with the declaration. If a board lacks the authority to implement a particular type of rule under any circumstances, a court need not consider whether the rule would have been reasonable. Furthermore, the process upheld in *Apple II Condominium Ass'n*, is precisely the process that plaintiffs advocate for here: a vote by unit owners on an amendment to the declaration.

¶ 21    We are also unpersuaded by defendants' reliance on *Board of Directors of 175 East Delaware Place Homeowners Ass'n v. Hinojosa*, 287 Ill. App. 3d 886 (1997). There, the condominium board adopted a rule prohibiting unit owners from bringing additional dogs onto the premises. *Id*. at 888. Neither the declaration nor the bylaws addressed pet ownership. *Id*. at 888, 891.

¶ 22    On appeal, the reviewing court found that because the declaration was silent on the issue of dog ownership, the board's rule did not create a conflict. *Id*. at 891; see 765 ILCS 605/18.4(h) (West 2004). The reviewing court also considered section 18(k) of the Act:

> "The bylaws shall provide for ***:
>
> * * *
>
> (k) Such restrictions on and requirements respecting the use and maintenance of the units and the use of the common elements, not set forth in the declaration, as are designed to prevent unreasonable interference with the use of their respective units and of the common elements by the several unit owners." 765 ILCS 605/18(k) (West 2004).

The court found that while this statute gives an association the authority to create restrictions in the condominium instruments, thereby cloaking such restrictions with a presumption of validity,

the statute did not provide that restrictions are unenforceable merely for being absent from the bylaws. *Board of Directors of 175 East Delaware Place Homeowners Ass'n*, 287 Ill. App. 3d at 891. Moreover, the board's rule was reasonable. *Id*. at 891-93.

¶ 23 In contrast, the declaration before us is not silent on leasing. As stated, the declaration contemplates that owners have the right to lease their units subject to the limitations specified in the declaration. Because the Board lacked the authority to implement a rule that conflicts with that right to lease, we need not consider whether the rule was otherwise reasonable, as the court was required to do in *Hinojosa*. We further note that contrary to defendant's disingenuous argument, no one has suggested that the Board's rule fails merely for being omitted from the bylaws.

¶ 24                                III. CONCLUSION

¶ 25 The declaration, when considered with the bylaws and the Act, clearly intended that owners have the right to lease their units, subject only to specific limitations. Although the declaration did not expressly state this intention, it did not need to, as this is the only reasonable inference to be drawn under these circumstances. Because the declaration has spoken on the matter of leasing, any augmentation or diminution of plaintiffs' right to lease their unit must be accomplished through an amendment to the declaration, not a rule promulgated by the Board. Accordingly, the circuit court properly entered summary judgment in favor of plaintiffs.

¶ 26 For the foregoing reasons, we affirm the circuit court's judgment.

¶ 27 Affirmed.