No. 2-24-0599
Order filed July 2, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| JORDAN BLANTON and RENEE MASTNY, as next friend of James Mastny, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 23-CH-91 |
| ILLINOIS HIGH SCHOOL ASSOCIATION, | ) ) | Honorable David R. Gervais, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not improperly raise a theory not encompassed in plaintiffs' declaratory judgment action, and it properly determined that the Association had acted arbitrarily and capriciously in imposing disciplinary sanctions against plaintiffs. The court also appropriately remedied the Association's misuse of discovery materials by precluding its use in any subsequent and future disciplinary rulings.

¶ 2    Defendant, Illinois High School Association (Association), appeals the judgments of the circuit court of McHenry County's declaratory judgment and grant of a protective order in favor of plaintiffs, Jordan Blanton (Coach Blanton) and Renee Mastny, as next friend of James Mastny (the student). The Association argues that the court erred in granting the declaratory judgment by using a theory not advanced by plaintiffs and by misinterpreting its bylaws. It also argues the court

abused its discretion in barring it from using information acquired in the discovery process in this case in any future disciplinary actions. We affirm.

¶ 3                                                    I. BACKGROUND

¶ 4      In 2017, Stacey Blanton, Coach Blanton's mother, provided flowers for Renee Mastny, the student's mother. A friendship between the two was formed and grew over the next few years.

¶ 5      During his elementary schooling, the student participated in both football and wrestling. For middle school, he was homeschooled within the Mastny household, but he was struggling. He also began to focus exclusively on wrestling, becoming a top under-16-year-old wrestler in Illinois. In 2023, as the school year drew to a close, the family decided to discontinue the student's homeschooling, and the student chose Marian Central for high school, but, because it was outside of the family's school district, they would have to move or rent a home closer to the school to enable the student to attend.

¶ 6      In the summer of 2023, the student focused on wrestling, and his parents focused on enabling him to attend Marian Central. For the student, the summer was devoted to wrestling, and he practiced occasionally with a training club operated by Coach Blanton, who was also co-coach of the Marian Central wrestling program. The student and Coach Blanton, independently, participated in a national wrestling tournament in Fargo, North Dakota, where Coach Blanton was assigned to coach wrestlers in the student's age group, including the student. According to Coach Blanton, they did not discuss the student's plans for high school, and he was unaware of the student's intention to attend Marian Central.

¶ 7      For the parents during the summer of 2023, they explored moving the family or splitting the family and renting an apartment near Marian Central. Their inquiries proved fruitless, and, after Renee Mastny discussed the family's dilemma, Stacey Blanton, who lived close to Marion Central, offered to let the student live in her home and to assume guardianship to allow him to

attend school. In August 2023, a few days before the beginning of Marian Central's school year, the student moved into Stacey's home, and, in September 2023, she was granted plenary guardianship over the student's person. According to Stacey, she did not discuss the student or her arrangement with the Mastnys with Coach Blanton at any time before the student moved in with her.

¶ 8    The student enjoyed academic and social success at Marian Central, earning high marks and various awards, including a service award, and sparking an ambition to pursue a college education upon completing high school. In November 2023, with the commencement of the season, he began wrestling for Marian Central.

¶ 9    That school year, the Association began investigating Marian Central's recruiting practices. On November 30, 2023, the Association's staff conducted interviews with plaintiffs, the student's parents, and Stacey Blanton. The same day, the Association's investigators issued a report to the Association's executive director, Craig D. Anderson.

¶ 10    On December 13, 2023, the Association issued a disciplinary ruling in which it concluded "that Coach Blanton and Marian Central Catholic High School have violated [the Association's] By-law 3.070 through Coach Blanton's family's offer and acceptance of lodging and guardianship of [the student] for school attendance and participation in wrestling." The ruling further concluded that, "there has been a violation of [the Association's] By-law 3.070 (Recruiting of Athletes) and its subsections." The Association determined that the conduct specifically violated subsection 3.072, which states: "It shall be a violation of this rule for any student athlete to receive or be offered any remunerations of any kind or to receive any special inducement of any kind which is not made available to all applicants who enroll in the school or apply to the school." Subsection 3.072 nonexclusively defines examples of special inducements, including subpart (5): "Offer or acceptance of a residence with any school connected person," and subpart (6): "Offer or acceptance

- 3 -

of any privilege not afforded to non-athletes." Association, Handbook with Illustrations 2023-2024 School Term 50 (2023). Then, pursuant to bylaw 6.010 (*id.* at 81), the Association pronounced that the student was permanently ineligible for any Association-sanctioned athletics at Marian Central, and Coach Blanton was ineligible to coach at any member school for one calendar year.

¶ 11 Plaintiffs appealed the decision to the Association's board of directors. On December 15, 2023, the board held the appeal hearing, allowing plaintiffs and Stacey Blanton to provide testimony. The board affirmed the disciplinary ruling. The board ruled:

"Among the factors important to the Board's consideration was the fact that allowing family members of school personnel to do what school personnel are precluded from doing directly would invite abuse of the recruiting rules. Family members must therefore be considered to be [*sic*] 'school connected personnel' for purposes of the rules. Thus, just as [Coach Blanton] would be prohibited from directly offering a student such as [the student] residence or any other privilege not afforded to non-athletes, so is his family precluded from doing so.

It is undisputed that [Coach Blanton] had known [the student] through wrestling since 2020 and had spoken with him at the Dual and National meets over the summer before [the student] enrolled at Marian Central Catholic. It is also undisputed that Stacey Blanton offered to become [the student's] guardian after Renee Mastny was unable to find suitable housing in the area of Marian Central Catholic. The Mastnys did not consider enrolling [the student] in any other high school other than Marian Central Catholic."

¶ 12 On December 19, 2023, plaintiffs filed their complaint for declaratory judgment and injunctive relief. The complaint specifically requested that the trial court find that Stacey Blanton was not a person associated with Marian Central, and that no person associated with the school

had violated bylaw 3.070 and its subsections. Further, it requested that the court find that the Association's disciplinary ruling was arbitrary and capricious. In addition to the complaint, plaintiffs also filed a motion for a temporary restraining order and preliminary injunction. On December 20, 2023, the Association filed answers to the complaint and the motion for a temporary restraining order. On December 21, 2023, the court granted plaintiffs' motion for a temporary restraining order and enjoined the Association from enforcing its disciplinary rulings against plaintiffs. The parties eventually agreed to the entry of a preliminary injunction prohibiting enforcement of the Association's disciplinary ruling, and the matter proceeded in due course.

¶ 13 On April 18, 2024, the parties entered an agreed confidentiality order. It defined confidential information as, among other things, information prohibited from disclosure by statute, medical information, personal identity information, and all records falling within the Illinois School Student Records Act (105 ILCS 10/1 *et seq.* (West 2024)). In addition, the order allowed the parties to designate materials as confidential, providing a procedure for them to follow. The order limited the use of confidential information only to the instant litigation and was "binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms." Along with the order, a formal acknowledgment document was included for the parties to sign to indicate that they had read the confidentiality order and understood and agreed to its terms. No signed copy of the acknowledgment appears in the record.

¶ 14 On May 28, 2024, the trial court set a final schedule for completing written and oral discovery. Trial was set to begin on August 19, 2024.

¶ 15 On July 29, 2024, the Association issued a supplemental disciplinary ruling[1] claiming a violation of subsection 3.073, purportedly based on information it obtained through the discovery

---

[1]No copy of the supplemental disciplinary ruling appears in the record.

process in this matter. Plaintiffs immediately challenged the action as a violation of the agreed confidentiality order. On July 30, 2024, plaintiffs filed a motion *in limine* seeking to hold the Association to its stated theory of the case. Specifically, the motion sought to limit the evidence to that concerning the alleged violation of subsection 3.072, to preclude the Association from adding any new theory of the case, such as a violation of any other bylaw or subsection, and to preclude the Association from retroactively justifying the original disciplinary decision by using information collected after December 2023 and during the discovery phase of this case. Plaintiffs also filed a motion to reinstate and modify the injunction to preclude the Association from enforcing the July 29, 2024, supplemental disciplinary decision, and an expedited motion for a protective order and discovery sanctions arising from the Association's purported use of information obtained in discovery as the basis to issue to the supplemental disciplinary decision. Plaintiffs also contacted the Association, and it agreed to withdraw the supplementary disciplinary decision. Thereafter, the motions were set for expedited resolution.

¶ 16    The Association filed responses to the motion *in limine* and the motion for protective order and sanctions. Regarding the motion for protective order and discovery sanctions, counsel for the Association acknowledged that he had inadvertently failed to share the contents of the agreed confidentiality order with Anderson, who had acted in ignorance the requirements of the confidentiality order when issuing the supplemental disciplinary ruling.

¶ 17    On August 19, 2024, the trial court entered an order continuing the motion for protective order and sanctions for decision after the trial had been conducted. The court granted the motion *in limine*, finding the partes agreed that they were limited to present only evidence known as of December 2023, precluded from presenting any evidence discovered after December 2023, and were limited to contesting whether plaintiffs had participated in a violation of bylaw 3.070 and subsection 3.072.

¶ 18    On August 19, 2024, trial began. Plaintiffs relied entirely upon written records and presented no testimonial evidence. The documents included, among other things, a copy of the Association's bylaws effective for the 2023-2024 academic year, the fact-finding memoranda detailing the Association's investigation, the Association's disciplinary ruling (written by Anderson), a video recording of the appeal before the board of directors, and the board's affirmance of the disciplinary ruling (again, written by Anderson). The Association presented Anderson's testimony in which he discussed the procedures used to investigate plaintiffs' actions. Following the hearing, the parties submitted written closing arguments.

¶ 19    On September 6, 2024, the trial court issued its decision. The court concluded that the student was not a "student-athlete" for purposes of subsection 3.072 at the time of the alleged violation, that Stacey Blanton was not a member of Marian Central's "school personnel" at any relevant time, so she could not have unduly influenced the student for purposes of bylaw 6.010, and that Stacey Blanton neither offered nor the student accepted any "special inducement" as described and defined by subsection 3.072. The court determined that the Association's December 13, 2023, disciplinary ruling and the board's December 15, 2023, affirmance of the disciplinary ruling were therefore arbitrary and capricious, and it permanently enjoined the Association from enforcing the disciplinary ruling and penalties against plaintiffs.

¶ 20    Also on September 6, 2024, the trial court issued a decision on plaintiffs' motion for protective order and discovery sanctions. The court noted that, three weeks before trial was set to commence, the Association violated the agreed confidentiality order by using material obtained during discovery to issue its July 29, 2024, supplemental disciplinary ruling. The court enjoined the Association "from otherwise using and or [*sic*] disclosing any and all confidential information obtained through the discovery process" in this case. The court expressly determined that confidential information also included, but was not limited to, "information [the Association] has

previously disclosed and used in issuing its [supplemental disciplinary ruling] and is the subject matter of [plaintiffs'] Motion." Additionally, the court *sua sponte* appointed a special prosecutor to investigate whether the Association and Anderson had engaged in indirect criminal contempt regarding the violation of the agreed confidentiality order.

¶ 21    On November 8, 2024, the special prosecutor presented her report with respect to the Association and Anderson, concluding there were no grounds to support charges of indirect criminal contempt against either the Association or Anderson. That same day, the court ordered the scope of the special prosecutor's inquiry to be expanded to include whether indirect criminal contempt charges were warranted against the Association's counsel. On November 25, the court determined that no grounds for indirect criminal contempt charges were warranted against the Association's counsel and terminated the special prosecutor's engagement.

¶ 22    The Association timely appeals.

¶ 23                              II. ANALYSIS

¶ 24    On appeal, the Association challenges the trial court's September 6, 2024, order granting declaratory and injunctive relief to plaintiffs, and it challenges the court's September 6, 2024, order extending the protections of the April 18, 2024, confidentiality order. We consider these challenges in turn.

¶ 25                    A. Declaratory and Injunctive Relief

¶ 26    In challenging the grant of declaratory and injunctive relief, the Association argues first that the trial court erred in concluding that its December 13, 2023, disciplinary ruling, as well as its subsequent affirmance of the ruling, were arbitrary and capricious. Next, it contends that the court erroneously based its decision on a theory that was neither pleaded nor argued by concluding that subsection 3.072 was inapplicable. The Association then argues that plaintiffs stipulated to the facts and legal issues thereby expressly waiving any consideration of the applicability of

subsection 3.072. Last, the Association contends that, as a private voluntary association, its interpretation of its bylaws and rules should have been respected, and the court erred in overstepping its authority and intruding into its interpretation of the recruiting prohibitions.

¶ 27        1. Disciplinary Ruling and Affirmance Were Arbitrary and Capricious

¶ 28    We first consider whether the trial court properly determined that the Association's disciplinary ruling and affirmance were arbitrary and capricious. The trial court held that subsection 3.072 was flatly inapplicable to the circumstances of this case. Our consideration hinges on correctly interpreting the Association's bylaws, and this is accomplished according to the principles of contract interpretation. *Stobe v. 842-848 West Bradley Place Condominium Ass'n*, 2016 IL App (1st) 141427, ¶ 13. The primary rule of interpretation, then, is to ascertain and give effect to the drafters' intent. *Id.* The best indication of the drafters' intent is the language of the bylaws given its plain and ordinary meaning; moreover, we construe the relevant documents (*e.g.*, bylaws, constitution) as a whole, giving every provision meaning and effect, if possible. *BKA Holding, LLC v. Sam*, 2023 IL App (2d) 230163, ¶ 16.

¶ 29    The Association based its disciplinary ruling on bylaw 3.070 and its subsections and bylaw 6.010. Those provisions also contain various terms defined in the bylaws that help illuminate the drafters' intent.

¶ 30    Bylaw 3.070 is entitled "Recruiting of Athletes," and it provides:

>        "In the enforcement of the rule, member schools shall be responsible for any
> violation committed by any person associated with the school, including principals,
> assistant principals, coaches, teachers, any other staff members or students, or any
> organization having any connection to the school. School personnel, particularly coaches
> or athletic directors, may not engage in any conversation related to athletic participation

with individuals representing or employed by private athletic organizations (eg. [*sic*] AAU, club-travel teams, etc.) who [are] speaking about or on behalf of any student athlete.

3.071 Recruitment of students or attempted recruitment of students for athletic purposes is prohibited, regardless of their residence.

3.072 It shall be a violation of this rule for any student athlete to receive or be offered any remunerations of any kind or to receive or be offered any special inducement of any kind which is not made available to all applicants who enroll in the school or apply to the school.

Special inducement shall include, but not be limited to:

\*\*\*

(5) Offer or acceptance of a residence with any school connected person.

(6) Offer or acceptance of any privilege not afforded to non-athletes.

\*\*\*

3.073 It shall also be a violation of this rule to induce or attempt to induce or encourage any prospective student to attend any member school for the purpose of participating in athletics even when special remuneration or inducement is not given.

Schools are not prohibited from conducting academic recruitment programs, programs which may include information concerning the school's extracurricular offerings. However, such recruitment programs must be designed to provide an overview of the academic and extracurricular programs offered by a school and are not to be used as a subterfuge for recruiting students for athletic purposes. Such general recruitment programs permissible under this rule shall be

carried out under the following guidelines: ***." Association, Handbook with Illustrations 2023-2024 School Term 50 (2023)

¶ 31 Next, plaintiffs were disciplined under bylaw 6.010, entitled "Penalty for Violating Rules," which provides:

"Any violation of the Constitution and/or [*sic*] By-laws, Terms and Conditions, [Association] Policies and Guidelines, and/or [*sic*] other rules of the Association shall be reported to the Executive Director, who shall have authority to investigate all alleged violations. The findings of the investigation shall be made known to the school (or schools), person (or person) [*sic*], alleged to have committed a violation. The Executive Director shall then have full authority to invoke penalties against such school or persons found to have committed violations. Penalties shall include, but not be limited to written warning or reprimand, requisite affirmative corrective action, up to and including suspension and/or [*sic*] expulsion. Failure to take the corrective action required by any penalty shall be the basis for further action, up to and including suspension and/or [*sic*] expulsion.

Persons found guilty of exercising undue influence to secure or retain the attendance of a student at a member school shall be ineligible to coach at an [Association] member school for one year. Sanctions shall also be imposed against the school represented by such persons.

Students whose high school attendance is found to have been affected by undue influence to secure or retain the student at a member school shall be permanently ineligible at that school." *Id.* at 81.

¶ 32 Next, we consider the definitions the Association has assigned to various terms pursuant to its constitution. "Induce" means "Communication and/or [*sic*] actions expressed to inspire,

move or lead by persuasion or influence related to athletic participation or opportunity a student to attend a particular school." Association, Handbook with Illustrations 2023-2024 School Term 11 (2023).

¶ 33    A "prospective student-athlete" is defined to be "A boy or girl who is not a student at and who has not yet registered at a public or non-public high school, but who has been identified by expression of interest and/or pre- or non-high school athletic participation as an individual potentially interested in participating in interscholastic athletics." *Id.*

¶ 34    "School personnel" is defined as "Any person, compensated or non-compensated, who provides services to the operations of a school with the consent of the administration and/or [*sic*] Board of Education or governing Board." *Id.*

¶ 35    "Student" is defined to be "A boy or girl who has formally registered and begun to attend classes at high school." *Id.* at 12.

¶ 36    "Student-athlete" means "A student who has participated in one or more practices and/or athletic contests in any sport offered by or under the auspices of a high school." *Id.*

¶ 37    "Undue influence" is defined as "any influence by school personnel upon a prospective student or a prospective student's family related to athletic participation, potential or accomplishment." *Id.* at 13.

¶ 38    Our interpretation begins with bylaw 3.070, which makes member schools responsible for "any violation" committed by "any person associated with the school," and provides a list of such associated persons. Relevant here, bylaw 3.070 uses the defined term, "school personnel" in prohibiting "any conversation" with private athletic organizations about any "student athlete." From this, we conclude that "any person associated with the school" is meant to be a broader category than "school personnel" prohibited from speaking to private athletic organizations. Bylaw 3.070 tasks the member school with responsibility to enforce the discipline it might impose,

but its prohibitions extend only to "school personnel," who are defined to be: "[a]ny person, compensated or non-compensated, who provides services to the operations of a school with the consent of the administration and/or [*sic*] Board of Education or governing Board."

¶ 39 The prohibitions of bylaw 3.070 are fleshed out by its subsections 3.071-3.073. Subsection 3.071 flatly prohibits athletic recruitment of "students." "Student" is a defined term meaning a "boy or girl who has formally registered and begun to attend classes at high school." Significantly, subsection 3.071 does not limit "high school" to member school. We therefore conclude that the drafters intended to prohibit the athletic recruitment of any registered boy or girl from any high school in this subsection.

¶ 40 Subsection 3.072 defines two types of violations: (1) offer or receipt of "any remuneration," and (2) offer or receipt of "any special inducement." Subsection 3.072 then defines "special inducement" in a nonexclusive list, including "residence with any school connected person," and "any privilege not afforded to non-athletes." The scope of subsection 3.072 is limited, however, to "any student athlete." "Student athlete" is a defined term meaning a "student [a boy or girl who has formally registered and begun to attend classes at high school] who has participated in one or more practices and/or [*sic*] athletic contests in any sport offered by or under the auspices of a high school." Thus, to constitute a violation of subsection 3.072, a student athlete must be offered or receive some sort of remuneration or be offered or receive a special inducement that is not made available to all applicants or enrollees.

¶ 41 Any gap caused by subsection 3.072 is closed by subsection 3.073, which provides that "[i]t shall also be a violation of this rule to induce or attempt to induce or encourage any prospective student to attend any member school for the purpose of participating in athletics even when special remuneration or inducement is not given." Subsection 3.073 covers "any prospective student," not simply "any student athlete." "Prospective" is defined as "concerned with or relating

to the future." Webster's Third New International Dictionary 1821 (1993). While "student" is defined to mean a person who has enrolled and begun attending high school classes, the modifier, "prospective" extends the status to persons who have just become age-eligible to enroll in high school and are planning to enroll in a member school, as well as existing high school students who are transferring to a member school. In short, subsection 3.073 covers students, whereas subsection 3.072 limits itself to student athletes.

¶ 42    Thus, bylaw 3.070 and its subsections present a comprehensive scheme prohibiting the recruitment of high school students for athletic endeavors. Bylaw 3.070 tasks the member school with the responsibility of enforcing the Association's disciplinary pronouncements. It also precludes school personnel from speaking with purported representatives of high school athletes. Subsection 3.071 makes the recruitment of students a violation, and subsection 3.073 makes the recruitment of prospective students to a member school a violation. Finally, subsection 3.072 makes providing remuneration or special inducement to student athletes a violation.

¶ 43    In this case, the Association elected to proceed solely under subsection 3.072. In its disciplinary ruling, the Association determined that Stacey Blanton had afforded the student the special inducements of a residence and of privileges not given to nonathletes. At the trial, the Association agreed to the motion *in limine* which limited the evidence to that accumulated through December 2023 and limited the bylaws to subsection 3.072. However, the evidence showed that, at the time of the offer and acceptance of a residence and the establishment of a guardianship, the student was not yet a "student athlete" as defined by the Association because he had not yet begun attending classes or participated in athletic activities at Marian Central. Because subsection 3.072 applies only to a "student athlete," it did not apply to the student. This contrasts with the plain language of subsections 3.071 and 3.073, which apply to "students" and "prospective students," respectively. Accordingly, the trial court was correct in determining that the student was not

subject to subsection 3.072.

¶ 44    This determination has further implications.  Because subsection 3.072 was inapplicable, there was no violation of bylaw 3.070 and its subsections sufficient to support the disciplinary sanctions imposed on plaintiffs under bylaw 6.010.  The predicate for imposing a penalty under bylaw 6.010 is a violation of the Association's constitution, bylaws, and other rules.  Because there was no violation of subsection 3.072 due to its inapplicability to the student, the Association could not use this subsection as a basis for imposing punishment under bylaw 6.010.  Accordingly, the Association acted arbitrarily and capriciously by using an inapplicable provision as the basis to punish plaintiffs.  See *Bosch v. NorthShore University Health System*, 2019 IL App (1st) 190070, ¶ 34 (a decision is arbitrary and capricious where it lacks a discernible rational basis).  Accordingly, the trial court properly determined that the Association had acted arbitrarily and capriciously and entered judgment in favor of plaintiffs.

¶ 45                    2. Trial Court Did Not Create a Novel Rationale

¶ 46    The Association contends that the trial court decided this matter on a novel theory neither raised in the complaint nor argued by plaintiffs during this action.  The Association is clearly correct that a party may not succeed on a theory not contained in its complaint.  *Kelly v. Orrico*, 2014 IL App (2d) 130002, ¶ 21.  In *Kelly*, we held that, where the plaintiffs' complaint alleged solely a breach-of-contract theory of relief, a judgment based on anticipatory repudiation of a contract could not stand.  *Id.* ¶ 23.  Notwithstanding the correctness of the legal principle cited, however, the Association's argument misses the mark.

¶ 47    Initially, we note that the Association, in both the December 13, 2023, disciplinary ruling, and in the board's affirmance, exclusively relied on conduct it claimed had violated subsection 3.072.  The Association's December 13, 2023, disciplinary ruling stated that "Coach Blanton and Marian Central Catholic High School have violated [Association] By-law 3.070 through Coach

Blanton's family's offer and acceptance of lodging and guardianship of [the student] for school attendance and participation in wrestling." Further, the Association stated that plaintiffs' actions violated subsections 3.072(5) ("Offer or acceptance of a residence with any school connected person") and (6) (Offer or acceptance of any privilege not afforded to non-athletes"). Association, Handbook with Illustrations 2023-2024 School Term 50 (2023). Similarly, the board's December 15, 2023, affirmance discussed that subsection 3.072(5) must be interpreted to include family members as "school connected personnel" to prevent "allowing family members of school personnel to do what school personnel are precluded from doing directly." Thus, the Association's original disciplinary ruling focused exclusively on subsection 3.072.

¶ 48    Plaintiffs' complaint included the text of bylaw 3.070 including subsections 3.071, 3.072, and 3.073. The complaint also requested that the trial court find that "any decision or determination by [the Association] that any person associated with [Marian Central] violated [the Association's] By-Law 3.070 and its subsections was arbitrary, capricious, and in violation of [the Association's] By-Laws." Plaintiffs also argued that the trial court "may find for the Plaintiffs if [the Association] acted arbitrarily or capriciously in either the *definition* of its By-Laws or the *application* of its By-Laws." (Emphasis in original.)

¶ 49    For its part, the trial court ruled that subsection 3.072 was inapplicable because the student did not fall under the Association's own definition of "student-athlete." The court also ruled that bylaw 6.010 was not applicable because Stacey Blanton was not "school personnel" as defined by the Association, and she did not engage in offering the student any inducement, special or otherwise, as defined by the Association. The court thus determined that the Association's disciplinary ruling was arbitrary and capricious because the bylaws were inapplicable to the circumstances.

¶ 50    We find that plaintiffs' complaint and argument are broad enough to encompass the rationale used by the trial court.  Fundamentally, the court determined that the bylaws did not encompass the conduct at issue in this case, and that the Association, in attempting to fit a square peg into a round hole, was not enforcing its bylaws as it had written them.  By consistently arguing that the Association's rulings were arbitrary and capricious, plaintiffs did not spring a surprise upon the Association, and the court did not utilize a novel theory in ruling in favor of plaintiffs. Plaintiffs' complaint, plaintiffs' evidence, and plaintiffs' arguments empowered the court to examine whether the Association had acted arbitrarily and capriciously in disciplining plaintiffs, including examining the basis for the alleged violations and the Association's interpretation and implementation of its bylaws in this case.  We reject the Association's claim that the court developed a novel rationale to resolve this case.

¶ 51    The Association's reliance on *In re J.B.*, 312 Ill. App. 3d 1140 (1999), and *Kelly*, 2014 IL App (2d) 130002, is unavailing.  In *J.B.*, the State filed a petition alleging that the minors were neglected because they were living in an environment injurious to their welfare (see 705 ILCS 405/2-3(1)(b) (West 1998)).  *J.B.*, 312 Ill. App. 3d at 1143.  At the hearing, the State presented evidence that the minors had been unsupervised for an unreasonable amount of time (705 ILCS 405/2-3(1)(d) (West 1998)), and the trial court made its determination based on the lack of supervision, which had not been pleaded.  *Id.* at 1143-44.  This court reversed the trial court's judgment because its decision was based on an unpleaded ground.  *Id.* at 1145.  Here, by contrast, plaintiffs' complaint challenged the Association's action as arbitrary and capricious, and the trial court determined that the Association had acted arbitrarily and capriciously in disciplining plaintiffs.

¶ 52    Similarly, in *Kelly*, the plaintiffs alleged only breach of contract in their complaint, but at trial, introduced evidence of anticipatory repudiation, which had not been pleaded; the trial court

decided the case on the unpleaded anticipatory repudiation theory. *Kelly*, 2014 Il. App (2d) 130002, ¶ 23. In contrast, here, the trial court's decision was rooted in plaintiffs' contention that Association's disciplinary ruling was arbitrary and capricious. Therefore, neither *J.B.* nor *Kelly* supports the Association's claim that the court here developed its own theory to resolve the controversy unsupported by the pleadings or the evidence.

¶ 53     The Association's reliance on *Miwel, Inc. v. Kanzler*, 2019 IL App (2d) 180931, while closer to the mark, fares no better than *J.B.* or *Kelly*. In *Miwel*, the trial court granted summary judgment to the defendant on grounds the defendant did not argue. *Id.* ¶ 9. This court reversed, holding that the plaintiff was entitled to notice that the case could be decided on the unpleaded ground and an opportunity to respond to that new argument or to demonstrate the existence of a genuine issue of material fact sufficient to preclude summary judgment. *Id.* ¶¶ 10-11. The Association argues that *Miwel* is similar to this case because, regardless of the expansiveness of their pleading, plaintiffs did not argue that subsection 3.072 did not apply to the student, only that Stacey Blanton should not be deemed a "school connected person."

¶ 54     We decline to follow *Miwel*, because it is based on fundamentally different circumstances than this case. In *Miwel*, the defendant presented one argument, the plaintiff responded to the argument, and the trial court rejected the defendant's argument and substituted an argument of its own devising. Here, the Association issued a disciplinary ruling asserting that subsection 3.072 both applied and provided the basis for the violation. Plaintiffs effectively appealed in the trial court and challenged the disciplinary ruling as arbitrary and capricious, thereby putting the Association on notice that the court would necessarily consider whether subsection 3.072 provided support for the Association's disciplinary action—including whether it was applicable at all. Unlike in *Miwel*, where the plaintiff only responded to the argument made by the defendant in the motion for summary judgment, the Association set and controlled the terms of the action in the

trial court because it was plaintiffs who were responding to the argument and rationale presented by the Association's disciplinary ruling. *Miwel*, therefore, is distinguishable on that basis.

¶ 55    In addition, we note that *Thomspon v. LaSpisa*, 2023 IL App (1st) 211448, presents a compelling rationale not to follow *Miwel*. In *Thompson*, the trial court decided a motion for summary judgment against the plaintiff on an issue that had not been briefed and which (unlike here), the plaintiff "could not possibly have expected would be a topic of debate" at the hearing on the motion for summary judgment. *Id.* ¶ 24. The *Thompson* court cited *Miwel*, but declined to vacate and remand for a new hearing for two primary reasons: first, because it was reviewing *de novo* the trial court's judgment on the motion for summary judgment, it believed that, "[f]or all practical purposes, the parties [were] litigating the summary judgment motion anew before three judges of the appellate court. And this time, [the plaintiff] face[d] no ambush; she can and did argue the substance of the ruling on its merits." *Id.* ¶ 27. Second, the court considers only the trial court's judgment, not its reasons for rendering the judgment, so it could affirm the trial court's judgment on any basis in the record. *Id.* ¶ 28. The fact that the parties had fully briefed the matter inclined the appellate court to resolve the issue before it. *Id.*

¶ 56    We find *Thompson*'s reasoning compelling. Here, any blindsiding is illusory given that plaintiff's declaratory judgment action was in response to the Association's disciplinary ruling, and plaintiffs clearly put the bylaws, including subsection 3.072, in issue by contending that the Association's ruling was arbitrary and capricious. Our review here, too, is *de novo*, as the parties proceeded largely through documentary evidence, and the live witness did not present any challenged testimony; moreover, we are necessarily interpreting the Association's bylaws in evaluating the trial court's judgment. See *Board of Education of Crete-Monee School District 201-U v. Caparelli-Ruff*, 2024 IL App (3d) 230389, ¶ 27 (documentary evidence even in administrative review is reviewed *de novo*). Finally, the parties fully briefed the issue, and this,

as in *Thompson*, inclines us to resolve the matter before us. For these reasons too, we decline to follow *Miwel*.

¶ 57 We conclude, therefore, that the Association has not demonstrated that the trial court created a novel and unpresented basis to dispose of the issues before it. Further, we find the Association's cases in support of this argument to be distinguishable, and regarding *Miwel*, sound considerations militate against following its reasoning. We therefore reject the Association's contention.

¶ 58                                     3. Stipulations

¶ 59 The Association argues that, nonetheless, the trial court improperly decided whether subsection 3.072 was even applicable because the parties agreed and stipulated to the facts and issues of law to be presented at trial. According to the Association, despite these stipulations, the court went beyond the stipulated issues to resolve this case on the grounds of the inapplicability of subsection 3.072. The Association argues "[w]here the parties by stipulation prescribe the issues on which the case is to be tried this amounts to a binding waiver or elimination of all issues not included in the stipulation." *Western National Bank of Cicero v. Village of Kildeer*, 19 Ill. 2d 342, 346 (1960). *Accord*, *Ziebell v. Board of Trustees of Police Pension Fund of Village of Forest Park*, 73 Ill. App. 3d 894, 896-97 (1979). We disagree that the trial court improperly reached any issues subject to waiver under the stipulation.

¶ 60 The parties' stipulation states:

"1. The parties agree that the sole issue pending before [the trial court] is whether the [Association] 'acted unreasonably, arbitrarily, or capriciously' when its Executive Director issued [its disciplinary ruling] on December 13, 2023, finding that the plaintiffs violated the [Association's] By-Laws ('Decision') and when its Board of Directors affirmed this Decision on December 15, 2023 ('Affirmation'). [The written disciplinary

ruling and Board decision are planned to be introduced into evidence and were already attached to the complaint.]

[The stipulation cites four cases as presenting the 'applicable law and standards' governing the legal analysis pertinent to this case: *Lee v. Snyder*, 285 Ill. App. 3d 555 (1996), *Robinson v. Illinois High School Ass'n*, 45 Ill. App. 2d 277 (1963), *Head v. Lutheran General Hospital*, 163 Ill. App. 3d 682 (1987), and *Lewis v. Hayes*, 152 Ill. App. 3d 1020 (1987).]

2. In its Decision and Affirmation, the [Association] alleged and found that [Coach Blanton] and Marian Central Catholic High School violated [the Association's] By-Laws 3.070 and 3.072 when [the student] accepted guardianship and residency with Coach Blanton's mother, Stacey Blanton. The Decision and Affirmation represent the actions taken by the [Association] that the Plaintiffs are challenging in the Complaint. The [Association] has represented that it believes that the plain language of [subsection 3.072] is sufficient to support the determination that the mother of the wrestling coach[, Coach Blanton,] is a 'school connected person' under sub-part 3.072(5) of By-law 3.070. The [Association] was not aware at the time of the Decision of Affirmation of any additional information that established any association or connection between Stacey Blanton and Marian Central Catholic High School other than her familial relationship as the mother of the wrestling coach, [Coach Blanton].

3. The question therefore presented to the Court for consideration at trial is whether the [Association] acted unreasonably, arbitrarily, or capriciously, as those terms are defined by Illinois law, when it issued its Decision and Affirmation."

¶ 61 The joint trial conference memorandum identifies the "sole issue" for the trial court to decide was whether the Association's disciplinary decision and the Board's affirmance of that

decision was arbitrary and capricious, and it places bylaw 3.070 and subsection 3.072 squarely in issue. Because the Association based its disciplinary decision on bylaw 3.070 and its subsections, the trial court properly considered those provisions in its decision. The Association unsuccessfully attempts to argue that the joint trial conference memorandum was limited to little more than a consideration of whether Stacey Blanton was a "school connected person."[2] However, as we have determined above, plaintiffs' complaint adequately challenges the entirety of the disciplinary ruling, and the joint trial conference memorandum likewise places in issue the Association's disciplinary ruling and affirmance.

¶ 62    The Association also argues that "Issue of Law No. 1 did no more than recite the governing legal standard for 'arbitrary and capricious,' " implying that the purported boilerplate recitation of "arbitrary and capricious" provided an insufficient basis for the trial court to examine whether the Association's disciplinary ruling was, in fact, arbitrary and capricious. We disagree. While issue No. 1 of the joint trial conference memorandum did recite pertinent authority touching on the proper standard of reviewing the Association's decision, the trial conference memorandum is not limited to issue No. 1. The Association wholly overlooks issue No. 3, which challenges the disciplinary ruling and affirmance as presenting the ultimate question of whether the Association acted "unreasonably, arbitrarily, or capriciously."

¶ 63    The Association also argues that, in trial stipulation No. 8, plaintiffs conceded that they were subject to the bylaws, including bylaw 3.070 and subsection 3.072. We disagree. The applicability of the bylaws is resolved only through the interpretation of the bylaws, and this

---

[2]The Association's affirmance of the disciplinary ruling used the term, "school connected personnel," which conflates the "school connected person" verbiage of subsection 3.072(5) with the defined term, "school personnel."

involves an issue of law. *Lo v. Provena Covenant Medical Center*, 342 Ill. App. 3d 975, 982 (2003). The Association's view of trial stipulation No. 8 renders it a legal conclusion, and it is well settled that a stipulation as to a legal conclusion arising from facts is inoperative. *People v. Levisen*, 404 Ill. 574, 578-79 (1950).

¶ 64 Similarly, the Association argues that paragraph 34 of plaintiffs' complaint established that the student was, in fact, a student athlete. In paragraph 34, plaintiffs alleged that, "On information from [Stacey Blanton], she would have made the same offer for residency and guardianship for [the student] if were he not a student athlete." This is simply a factual allegation made on information and belief, and such allegations are not considered to be judicial admissions. *Kouzoukas v. Chamopoulos*, 133 Ill. App. 2d 14, 18 (1970). As such, it is at best an evidentiary admission subject to contradiction and explanation. *Knauerhaze v. Nelson*, 361 Ill. App. 3d 538, 558 (2005). The evidence at trial established that, at the time of the offer and acceptance of residency, as well as the offer to assume guardianship, the student had not yet begun classes at Marian Central. Therefore, the student was neither a "student" nor a "student athlete" as defined by the Association's bylaws.

¶ 65 Finally, the Association argues that stipulations affecting the conduct of a suit will be enforced unless there is a proper showing that the stipulation is unreasonable, violative of public morals, or the result of fraud, relying on *In re Estate of Moss*, 109 Ill. App. 2d 185, 192 (1969). However, using an otherwise inapplicable provision to impose permanent athletic ineligibility on the student and to suspend the coach from any athletic-coaching endeavors for one year is both the height of unreasonableness and definitionally arbitrary and capricious. See *Bosch*, 2019 IL App (1st) 190070, ¶ 34 (a decision is arbitrary and capricious where it lacks a discernible rational basis).

¶ 66 Our conclusion that the trial court properly determined that subsection 3.072 was simply inapplicable to provide a basis for disciplinary action resolves this portion of the Association's

appeal. In the absence of basis from which to impose any disciplinary sanctions, the Association's disciplinary ruling and affirmance were arbitrary and capricious exercises of nonexistent authority, and we need not consider the Association's remaining contentions regarding the court's decision granting judgment in plaintiffs' favor and enjoining the Association for enforcing the disciplinary ruling.

¶ 67                    4. Deference to Voluntary Associations Rule

¶ 68    The Association argues that, because voluntary associations are accorded great latitude in the conduct of their own internal affairs, it was within its discretion in interpreting the meaning of its bylaws and particularly when determining that plaintiffs' conduct violated subsection 3.072. Illinois courts have long recognized this principle of deferring to a voluntary association's interpretation of its own bylaws. See *Engel v. Walsh*, 258 Ill. 98, 103 (1913) ("Courts will not interfere to control the enforcement of by-laws of [voluntary] associations, but they will be left free to enforce their own rules and regulations by such means and with such penalties as they may see proper to adopt for their" own governance). As the principle has evolved over time, courts will intervene in the affairs of voluntary associations where the organization violated its own internal rules as well as in cases of mistake, fraud, collusion, or arbitrariness. *Finn v. Beverly Country Club*, 289 Ill. App. 3d 565, 568 (1997).

¶ 69    The Association focuses on the trial court's conclusion that Stacey Blanton was not a "school connected person." The Association contends it had broad powers to interpret its bylaws, and so long as the interpretation was reasonable, it should have been allowed to stand. To the particular point, we agree. The Association concluded that, to decline to deem Stacey Blanton a "school connected person" would result in "allowing family members of school personnel to do what school personnel are precluded from doing directly." So far as the Association's argument goes, it is on solid ground.

¶ 70    However, the Association ignores the more important determination made by the trial court: that subsection 3.072 was altogether inapplicable under the circumstances here. Because subsection 3.072 was inapplicable, any discipline based on it was necessarily arbitrarily and capriciously imposed, regardless of the reasoning applied. See *Bosch*, 2019 IL App (1st) 190070, ¶ 34 (a decision is arbitrary and capricious where it lacks a discernible rational basis). Because the Association acted arbitrarily and capriciously in ignoring the inapplicability of subsection 3.072 to the circumstances present here, the court's intervention into its internal affairs does not run afoul of cases like *Engel* and *Finn*. We therefore reject the Association's contention.

¶ 71        5. Association's Remaining Arguments Against the Trial Court's Judgment

¶ 72    The Association contends that the trial court misinterpreted the portions of the bylaws pertaining to whether Stacey Blanton was a school connected person and whether the evidence showed that any sort of inducement or influence caused the student to attend Marian Central. Because subsection 3.072 was inapplicable to the circumstances here, we need not further consider the Association's contentions.

¶ 73    Accordingly, we affirm the trial court's September 6, 2024, judgment granting plaintiffs declaratory relief and enjoining the Association from enforcing both its disciplinary ruling and its affirmance of that ruling.

¶ 74                          B. Discovery Sanction

¶ 75    The Association contends that the trial court abused its discretion in entering its September 6, 2024, order enjoining the Association from using or disclosing information it obtained through the discovery process and used in issuing its supplemental disciplinary ruling. On July 29, 2024, the Association issued a supplemental disciplinary order which was based on information it procured during discovery for the instant case. The Association withdrew the supplemental ruling after plaintiffs complained, and plaintiffs sought sanctions based on an alleged abuse of discovery.

¶ 76    On appeal, the Association frames the issue as one solely of a violation of discovery leading to sanctions under Illinois Supreme Court Rule 219(c) (eff. July 1, 2002). The Association challenges the trial court's September 6, 2024, order as wholly and improperly punitive and also lacking the specific reasoning and justification for fashioning the sanctions imposed under Rule 219(c). We disagree with both the Association's argument and framing of the issue.

¶ 77    In its September 6, 2024, order, the trial court found that the Association "admitted it violated this Court's [confidentiality] order" when it issued its July 29, 2024, supplemental disciplinary ruling "based upon the content, substance, and testimony given in depositions in this matter, and other Confidential Information subject to this Court's Confidentiality Order." The court determined that the Association "unreasonably failed to comply with and violated the Court's April 18, 2024, Confidentiality Order and otherwise engaged in a material abuse of discovery" by using or disclosing "confidential information obtained through discovery for purposes other than in this litigation to the prejudice of [plaintiffs]." The court ordered that, "to remedy and protect against further violation of the agreed confidentiality order and/or [*sic*] further abuses of the discovery process, [the Association] be now and forever enjoined from otherwise using and or disclosing any and all confidential information obtained through the discovery process herein." The court further ordered the expansion of the original confidentiality order to cover "information [that] includes[,] but is not limited to, information [the Association] has previously disclosed and used in issuing its" July 29, 2024, supplemental disciplinary ruling.

¶ 78    With this background, it is apparent that the correct framing of the issue is whether the Association could use properly obtained discovery to form the foundation of a future disciplinary action against plaintiffs. The answer to that question is no.

¶ 79    Illinois has long prohibited the use of the discovery process as a sort of fishing expedition to uncover evidence on which to base future lawsuits. *Robson v. Doyle*, 191 Ill. 566, 569 (1901)

(holding as "bad beyond all question" to use discovery "for the purpose of commencing suits in the future to recover penalties from the defendant"). In *Prinova Solutions, LLC v. Process Technology Corp. Ltd.*, 2018 IL App (2d) 170666, ¶ 28, this court distinguished between the improper use of discovery to learn whether a wrong had been committed—a fishing expedition— and the proper use of discovery to learn the identity of the party who committed a known wrong. Indeed, the supreme court rules contemplate that discovery will be properly sought and used only for the current litigation, and they do not countenance its use for fishing about for a new wrong to penalize. See, *e.g.*, Ill. S. Ct. Rs. 202 (eff. Jan 1, 1996) (deposition testimony will be used in the current action); 212(a) (eff. Oct. 1, 2020) (enumerating the only uses for discovery depositions; none of the enumerated uses is for future litigation); 213(b) (eff. Jan. 1, 2018) (it is the duty of an attorney promulgating written interrogatories "to restrict them to the subject matter of the particular case").

¶ 80    The Association runs afoul of Illinois' general prohibition of using discovery in the current case as the foundation for future cases. Its misconduct was not simply a discovery violation that could be remedied under Illinois Supreme Rule 219(c) (eff. July 1, 2002), because it was not a simple violation of process or failure to comply with the rules. Instead, it was the fundamental misuse of information properly obtained through discovery processes. In our view, the trial court fashioned a reasonable remedy by expanding the existing confidentiality order to cover the information properly obtained in discovery that provided the basis for the Association's July 29, 2024, supplemental disciplinary ruling. As the court explained, its order was designed to "remedy and protect against further violations of the agreed confidentiality order" and future abuses of discovery.

¶ 81    The Association argues that the trial court abused its discretion because its order was wholly punitive, which is contrary to the purpose of discovery sanctions, relying on *Sander v. Dow*

*Chemical Co.*, 166 Ill. 2d 48, 68 (1995) ("purpose of imposing sanctions is to coerce compliance with court rules and orders, not to punish the dilatory party"). We disagree. The court's order cabins the discovery properly taken for this case and precludes its future use as a foundation for further disciplinary rulings. The order thus preemptively remedies the harm threatened by the Association, namely improperly using discovery taken in this case to found a wholly new case against plaintiffs. The Association mistakenly confuses what is clearly a remedy against future harm with punishment, and we reject its contention.

¶ 82　The Association asserts that none of the deposition testimony had been or could have been designated as "confidential information" under the agreed confidentiality order. It argues that it was therefore entitled to use the nonconfidential information it obtained through discovery in this matter in any way it saw fit. This, as we have explained, misconceives the purpose of discovery, which is to gather full and complete information to allow the parties to correctly evaluate and try the instant case (see *Dameron v. Mercy Hospital & Medical Center*, 2020 IL 125219, ¶ 18, quoting *D.C. v. S.A.*, 178 Ill. 2d 551, 561 (1997) ("discovery aims 'to enhance the truth-seeking process, to enable attorneys to better prepare for trial, to eliminate surprise and to promote an expeditious and final determination of controversies in accordance with the substantive rights of the parties' ")), not to fish for new ways to penalize the opposing party (see *Robson*, 191 Ill. at 569 (holding that discovery could not be used to gather evidence for commencing a new action to penalize the opposing party)). The point is not whether the depositions and the information could be labeled as confidential; rather, it is that, under longstanding principles regarding discovery, it was out of bounds for use as the basis of new actions against the opposing parties. Thus, we reject the Association's contention.

¶ 83　Similarly, the Association argues that the "penalty" of preclusion from using any information it obtained in discovery is disproportionate to its conduct. Again, we disagree. The

proposition that a discovery sanction should be proportionate to the gravity of the discovery violation (*Buehler v. Whalen*, 70 Ill. 2d 51, 67 (1977)) is satisfied here. The sanction, to the extent it is a sanction and not a remedy, precludes the misuse of information obtained in discovery in this case. In the run up to trial, the Association demonstrated that it would not hesitate to penalize plaintiffs with new disciplinary actions based on the discovery information obtained in this case. The trial court's remedy is completely proportionate to the gravity of the Association's abuse of discovery materials.

¶ 84    The Association complains that the trial court improperly charged it with "abuse[ ] of the discovery process." It maintains that the court's order was entered under the auspices of Rule 219(c), and not Illinois Supreme Court Rule 219(d) (eff. July 1, 2002), which expressly deals with abuse of the discovery process. It further contends that even Rule 219(d) is inapplicable because it applies only "when a party 'obtains or attempts to obtain' information through 'an improper discovery method.' " The Association truncates its quotations of Rule 219(d), distorting its meaning and scope. The full sentence states: "If a party wilfully obtains or attempts to obtain information by an improper discovery method, wilfully obtains or attempts to obtain information to which that party is not entitled, *or otherwise abuses these discovery rules*, the court may enter any order provided for in paragraph (c) of this rule." (Emphasis added.) Ill. S. Ct. R. 219(d). Thus, Rule 219(d) covers situations including the abuse of the discovery rules, such as the Association's improper use of discovery materials, and it is not limited solely to improper discovery methods.

¶ 85    Accordingly, we hold that the September 6, 2024, order did not constitute an abuse of discretion, and the trial court properly fashioned an appropriate remedy commensurate with the Association's actual and threatened future conduct. Because we affirm the trial court's judgment

in all respects, we need not consider the Association's arguments supporting its request that, upon remand, we should direct that the matter be assigned to a new trial judge.

¶ 86                              III. CONCLUSION

¶ 87     For the foregoing reasons, we affirm the judgment of the circuit court of McHenry County.

¶ 88     Affirmed.